# CHARLESTON.

WINGO MINING COMPANY v. FLANAGAN COAL SALES CO.

Submitted January 30, 1923.    Decided February 6, 1923.

1. APPEAL AND ERROR—*Finding of Jury Generally Conclusive of Disputed Facts.*

    Where the issue in an action on an account is whether there has been a former settlement between the parties in which all matters in difference were included, except the item sued on, and there is conflicting evidence, the finding of a jury thereon is generally conclusive of the disputed fact. (p. 80).

2. SAME—*Mere Preponderance in Number of Witnesses in Determination of Disputed Facts Will not Control.*

    The weight of evidence and the credibility of witnesses is peculiarly within the province of the jury. Mere pre-

ponderance in the number of witnesses in the determination of a disputed fact will not control.   (p. 80).

3.   SAME—*Where Witness Fully Answers in Another Form Questions to Which Objection Has Been Sustained, Error, if Any, Cured.*

Where an objection has been sustained to a question propounded a witness, but subsequently the witness fully answers the question propounded in another form, error, if any, has been cured.   (p. 80).

(McGINNIS, JUDGE, absent).

(LITZ, JUDGE, absent).

Error to Circuit Court, McDowell County.

Action by the Wingo Mining Company against the Flanagan Coal Sales Company.   From a judgment of the circuit court for plaintiff on appeal from a justice of the peace, defendant brings error.

*Affirmed.*

*E. C. Marshall*, for plaintiff in error.
*J. N. Harman, Jr.*, for defendant in error.

LIVELY, JUDGE:

The Flanagan Coal Sales Company prosecutes this writ of error from the judgment of the circuit court of McDowell County, pronounced on the first day of April, 1922, based on the verdict of the jury for the sum of $219.51 in an action appealed from the court of a justice of the peace.

It appears that T. C. Wingo, trading as Wingo Mining Company, was engaged in mining coal from lands leased by him, and entered into a contract with Flanagan Coal Sales Company by which the latter sold the coal for the former on a commission basis of 8%.   The defendant was engaged in buying and selling coal on its own account and in selling coal of other persons on commission.   In the fall of 1920 several car loads of coal were loaded by plaintiff and placed at the disposal of defendant under the contract, and were consigned by the coal sales company to purchasers at Chicago and elsewhere in the west.   Prior to the 10th of January, 1921, plain-

tiff addressed several letters to defendant, at its office in Welch, asking for payment for the coal, and not receiving satisfactory response thereto visited the office of defendant on said date for the purpose of obtaining a settlement. He says that he had a full and complete settlement with defendant on that day, with the exception of the price of one car of coal shipped on December 18th and designated C. B. & Q. Car No. 172319, on which defendant claimed it had no report and for which no settlement was made. He said that he told defendant it was necessary for him to have money for the coal mined and shipped, because in the following month his royalties were due to his lessor and were based upon the prices for which the coal was sold. The royalty was paid on a sliding scale depending upon the price which he received. At that time defendant's bookkeeper furnished a statement of the number of cars shipped, the number of tons contained in each, and the aggregate prices for which they were sold to the purchasers, from which the 8% commission was subtracted, leaving a net sum of $1283, which defendant then paid to him by check. Afterwards, in May, 1921, he received a report on the C. B. & Q. car to the effect that it contained 56-65/100 tons of coal which sold for $4.00 per ton, amounting to $238.60, from which the commission of 8% was to be subtracted, leaving $219.51, for which he instituted the suit before a justice of the peace. The defendant claims that no settlement was made on the 10th of January, 1921; that at that time it had not received reports on the prices which the coal brought but only had the weights of the cars, and estimated what the coal would bring, and the statement furnished to plaintiff on that date, which gave the prices, was only an estimate, and that it was understood by all parties interested that it was not a complete settlement; that inasmuch as plaintiff was insistent about receiving money with which to meet his obligations, defendant accommodated him to the extent of the check given. Defendant filed as a set-off to plaintiff's claim a statement of the sums which the various cars brought, together with the items for demurrage and reconsignment charges which, with the 8% commission charged,

overbalanced plaintiff's account to the extent of $55.01, for which it sought judgment.

Three witnesses only were examined, the plaintiff, Henchey, manager for defendant, and Henritz, its secretary. The statement furnished by defendant to plaintiff on January 10th, showing the number of cars, weights and prices received, with a notation thereon that no report had been received on the C. B. & Q. car, was also introduced in evidence. It will be seen that the issue was sharply drawn. Plaintiff says there was a full and complete settlement of the accounts on the 10th of January; with the exception of the C. B. & Q. car, and payment therefor then made. Defendant says that no such settlement was made and that it was distinctly understood that it was a partial settlement and at that time a full settlement could not be made for the coal received, because they did not have sufficient data on which to base it. The case was submitted to the jury on this issue. The court instructed for the plaintiff as follows: "The Court instructs the jury that if you believe from the evidence that the plaintiff and the defendant had a settlement of the account between them on January 10, 1921, except as to C. B. & Q. car No. 172319, then you shall find for the plaintiff and assess his damages at the sum of $219.51." A peremptory instruction to find for the plaintiff in the sum of $219.51 was refused.

On behalf of defendant the court gave two instructions to the effect that the plaintiff must prove his case by a preponderance of the evidence; and that if the plaintiff relied on the settlement referred to he must prove the settlement by a preponderance of the evidence. The court also instructed for defendant as follows: "The court instructs the jury that if you believe from the evidence that when the statement introduced in evidence dated January 10, 1921, was given Mr. T. C. Wingo, as testified to, the defendant had not received reports on the prices obtained for the cars of coal mentioned therein, and had not received reports on prices obtained for the two other cars shown as testified to by some of the witnesses, and if you further believe that there

was no settlement made at the time said statement of January 10, 1921, then you cannot find any amount for the plaintiff.'' ''The Court instructs the jury that before a settlement could have been had between plaintiff and defendant, both plaintiff and defendant must have been in possession of all the facts at the time, and if you believe that at that time the defendant was not in possession of all of said facts, there could have been no settlement.'' A peremptory instruction to find for defendant was refused. The jury returned a verdict for $219.51, and the usual motions were made to set aside the verdict and award a new trial, and it is now insisted: (1) that the verdict is not sustained by the evidence; (2) that the court committed error in refusing to instruct the jury to find for defendant; (3) that the court erred in giving the instruction asked for by plaintiff, above set out in full; and (4) that the court erred in sustaining plaintiff's objection to a question propounded Henchey, and which will be referred to hereafter.

Was the evidence sufficient to sustain the verdict? It is insisted that the vast preponderance of the evidence is that there was no settlement on the 10th of January and that it was impossible for defendant to make such settlement because it did not have sufficient data. It is also insisted that plaintiff's evidence cannot be construed to mean that he understood such settlement had been made at that time. We interpret the evidence of the plaintiff quite differently. He says that he understood it was a final and complete settlement of the amounts then due, with the exception of the C. B. & Q. car, and that the defendant knew at what prices it had sold the coal. It would be rather unusual for coal to be sold without knowing the price which the seller was to receive, and this natural inquiry is not explained by defendant's witnesses. The presumption would be that it knew what price the coal would bring before it was consigned. Moreover, it will be noted that plaintiff was vitally interested in the price of his coal, because at that time he was preparing to settle with his lessor for royalties on the prices received, at which it sold. We think the evidence is sufficient to sustain the

verdict. Where there is a controverted fact, mere number of witnesses will not control. The weight of such evidence and the credibility of the witnesses is peculiarly within the province of the jury. In considering a motion to set aside a verdict as contrary to the evidence it is well established that all of the evidence of the losing party which is in conflict with that of his adversary must be rejected, and if the evidence thus considered is sufficient to sustain the verdict it must be upheld. The two theories on which the parties relied and which were supported by their respective witnesses were fully set out by proper instructions to the jury, and we perceive no error in the giving of these instructions; they properly propound the law governing the issue.

Witness, Henchey, the manager for defendant, was asked: "State whether or not that statement which you gave him there and that amount which you paid him was subject to be corrected by your company," to which plaintiff interposed an objection, and the objection was sustained with exception by defendant; but the witness answered the question in the affirmative, and he was then asked: "Tell why," and without objection he detailed fully the reasons why the statement which he then gave to defendant of the weights and prices received was subject to correction. "Error in the rejection of evidence is fully cured by the subsequent testimony of the witness, and such error will not justify a reversal." *Yates v. Coal Co.,* 76 W. Va. 50.

Perceiving no error, we will affirm the judgment.

*Affirmed.*