# CHARLESTON.

### EDWARD REISER *v.* A. C. LAWRENCE

### Submitted March 11, 1924.  Decided March 25, 1924.

1.   SALES.—*Where Market Price at Place of Delivery Based on Another Market, It May be Resorted to.*

   Where in an action for damages by the purchaser for breach of the contract by the seller, in which the measure of plaintiff's damages is the difference between the contract price and the market price of the goods at the time and place of delivery, there was no market price at such point except that

established by a general trade regulation or custom pertaining to the particular goods purchased, based on prices established at another market, that market may be resorted to in determining the market price at the time and place fixed for delivery of the particular goods purchased. (p. 88).

2.  SAME.—*Purchaser on Breach Not Bound to Purchase Elsewhere; Purchaser, on Breach, May Sue for Profits at Prices at Time and Place of Delivery.*

Where there has been a breach of contract by the seller, the purchaser is not bound to go into the market and buy the goods contracted for, but may sue for the damages by way of profits which he would have made at the prices obtainable at the time and place of delivery. (p. 89).

3.  SAME.—*Proof by Defendant of Price of Subsequent Sale of Same Goods Properly Excluded.*

In such an action by the purchaser against the seller of goods for damages sustained by the seller's breach, the trial court may properly deny defendant the right to prove by his own and other evidence that after making the contract he contracted the same goods to another at a price less than the price stipulated in the contract with plaintiff. In such a case the question before the jury is not what price the defendant may have subsequently sold the goods to another for, but what was the market price thereof, as a means of determining plaintiff's damages. (p. 90).

4.  EVIDENCE.—*Exclusion of Letters and Telegrams Containing Self-Serving Declarations, Denying, or Excusing Breach of Contract Not Erroneous.*

Nor did the trial court in this case commit error by refusing to admit in evidence certain letters and telegrams of defendant to plaintiff, sent subsequently to the making of the contract, containing self-serving declarations denying or attempting to excuse his breach of the contract sued on. (p. 92).

5.  SAME.—*Unsigned Memorandum of Contract Held Admissible as Part of Res Gestae.*

While an unsigned memorandum of contract may not be admitted as evidence of the contract, and the controversy before the jury is whether there was an oral contract and the terms thereof, and it is shown that such unsigned memorandum was shown to and read over by the defendant and its terms assented to by him, the trial court may properly admit the same in evidence as a part of the res gestae, because an incident of the transaction and in contemplation of law a part of it. (p. 90).

6. APPEAL AND ERROR.—*Abstract Instruction Not Ground For Reversal, Unless Clearly Prejudicial.*

Because an instruction may be abstract and therefore defective in form, though pertinent to the facts in the case, it will not be ground for reversal unless clearly prejudicial to the complaining party. (p. 93).

7. SALES.—*Seller May Not Refuse to Perform, Unless Given Arbitrary Right to Judge Purchaser's Ability to Perform.*

Unless the contract in terms gives the seller the arbitrary right to judge of the purchaser's financial ability to perform the contract on his part, he may not lawfully decline to perform the contract, if the purchaser be in fact able, ready and willing to comply with the contract on his part or actually offers by methods within the power of the seller to adopt to thereby insure him the purchase price. (p. 93).

8. TRIAL.—*Refusal of Instruction, Not Supported by Proof Not Erroneous.*

Where the evidence clearly shows that defendant was the first to breach the contract, the court may rightfully reject an instruction based on the theory that plaintiff first breached the contract and thereby excused further performance thereof by defendant. (p. 94).

9. CONTRACTS.—*Party First Breaching Contract Cannot Rescind Because Other Party Subsequently Refuses to Perform.*

A party to a contract who has himself been guilty of a substantial breach of his contract can not rescind the contract because the other party thereto subsequently refuses or fails to perform it on his part. (p. 95).

10. SAME.—*Can Not be Rescinded for Misrepresentations Not Relied on.*

Where one party to a contract does not rely on representations alleged to have been made to him by the other party or his agent as to a particular matter pertaining to the contract, as in this case the ability of the party to perform or his financial ability in respect thereto, he can not rescind the contract based on such alleged misrepresentation. (p. 95).

Error to Circuit Court, Kanawha County.

Action by Edward Reiser against A. C. Lawrence. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*A. G. Thompson* and *C. L. Smith,* for plaintiff in error.
*Koontz, Hurlbutt & Revercomb,* for defendant in error.

MILLER, JUDGE:

In an action for damages for the alleged breach by defendant of a contract for the sale and purchase of gasoline— the entire product of defendant's gasoline plant at Oilville, near Cedar Grove, Kanawha County, from February ———, 1922, to the end of that year, December 31st—plaintiff obtained a verdict and judgment for $2,350.00, which defendant by this writ of error seeks to have reversed.

The first question of fact presented to the jury on the pleadings and evidence, was whether the contract alleged had been in fact entered into unconditionally and concluded between the parties, so as to be binding on both. As alleged in the several counts, the substance of the contract was that defendant agreed to sell and plaintiff contracted to purchase the entire output of defendant's gasoline plant for the residue of the calendar year, about 900 gallons per day, in approximately equal quantities, at the price of 14 cents delivered f. o. b. buyer's cars at Cedar Grove, based on the Atlantic Refining Company's tank wagon market in Pennsylvania, then 23 cents, taking full advance or decline, that is, as explained in the evidence, when the tank wagon price at Pittsburgh advanced one cent or more, plaintiff was to pay defendant one cent or more in addition to the stated price of 14 cents per gallon, and if it went down one cent or more, defendant was to receive that amount less than the basic price.

The evidence shows that the contract alleged originated in negotiations begun between one Alfred Howell, who sometimes acted as broker in such transactions, and the defendant Lawrence; but on the suggestion of defendant that he preferred to deal directly with the actual purchaser, the contract, it is alleged, and the evidence of plaintiff shows, was concluded, if at all, with the plaintiff, a dealer in gasoline in Pittsburgh, Pennsylvania. The terms of the contract were fully set forth in a written memorandum presented by Howell and shown defendant, but not signed by either party, because of the change in the name of the purchaser and the time re-

quired to change the papers between Charleston, West Virginia, where the negotiations began, and Pittsburgh, where plaintiff resided and did business. Howell thereafter acted as agent for plaintiff with authority from the latter. The plaintiff's evidence shows that, though no memorandum in writing was thereafter signed, the contract was actually made; and the memorandum in writing, not signed, was admitted in evidence, not as evidencing a contract in writing, but as tending to show the terms of an oral contract agreed upon. The evidence of Howell is that defendant read the contract and agreed to its terms, and that he would sign a contract with Reiser, the plaintiff, when prepared and signed by him.

The evidence further establishes the fact that almost immediately after the time when Howell swears he concluded the agreement with defendant, Lawrence, on February 17, 1922, on his order, shipped a car of gasoline, then already loaded, to Reiser, or for his account, consigned to Penn American Refining Company, Oil City, Pennsylvania, but withheld the bill of lading until about February 27th, when he sent it to plaintiff. Until plaintiff received the bill of lading, he was unable to deliver the gasoline or collect the price.

After so concluding the contract and shipping the first car of gasoline, defendant loaded a second car, at his plant, and on February 24, 1922, wrote Reiser at Pittsburgh that he had shipped this car to the same consignee as per plaintiff's wire, but the fact shown in the evidence is that he diverted this car to a consignee at Toledo, Ohio, though the car was one provided by plaintiff, and thereafter refused to ship plaintiff any more gasoline.

The position of defendant, with reference to these transactions between himself, Howell and Reiser, is that he never finally concluded any contract with plaintiff, or with Howell as his representative; that his negotiations in relation thereto were tentative and conditional only, the conclusion of the contract depending upon whether or not he should find out and be satisfied that Reiser was responsible and financially able to perform the contract on his part, and that after notifying Reiser on February 24th that he had shipped as per his wire the second load of gasoline, he became dissatisfied with

Reiser's credit and diverted the car to another consignee, on his own account.

The oral and documentary evidence admitted, consisting of the testimony of Howell, Reiser and Lawrence, and of letters and telegrams exchanged between plaintiff and defendant, all relates to the prior negotiations leading up to the alleged contract and the subsequent demands of the plaintiff for the gasoline contracted for, and the denials of Lawrence of the fact of the contract and his reasons for not consummating it and for not performing the contract, if in fact made, which we think it unnecessary to further detail.

The pleadings and evidence presented to the jury practically but three questions; the first, whether in fact a contract was concluded between the parties; the second, if a contract was in fact made, which of the parties first breached it, excusing the other from further performance; and third, the amount of damages, if any, plaintiff was entitled to recover, in the event the issues upon the first two propositions should be determined in his favor. These issues of fact were solely for the jury to determine, including the question whether the contract if made was conditional or unconditional, as claimed by the respective parties. No condition was stipulated in the memorandum contract in writing originally presented to defendant by Howell. The evidence on this question may later be referred to.

The defendant's counsel, however, complains here of the several rulings of the court below on the evidence. First, it is said that the court improperly refused to admit evidence of the fact that defedant, after his alleged breach of the contract, sued plaintiff in Allegheny County, Pennsylvania, and secured a judgment there against him for the price of the first car load of gasoline, and that execution thereon was returned *nulla bona*. The record of such judgment and execution was not offered in evidence. But if the fact of such judgment and execution could be proven independently, what probative value could they have had on the issues presented to the jury? They would have thrown no light on the question of fact whether a contract was in fact made between the parties, nor whether it contained the condition claimed by defendant.

Plaintiff admitted he owed defendant for the first car load of gasoline, and that his reason for not remitting the price was that defendant had not sent him the bill of lading for ten days after the shipment, and that he had learned directly after receiving the bill of lading, and perhaps before, that defendant had consigned the second load, in the car furnished by him, to another consignee at Toledo, Ohio, and would refuse to further perform his contract, to his great damage and loss. The fact that the execution was returned "no goods" signified little, if anything; for many a man with ample credit and financial ability may be found without physical goods capable of being levied upon by an officer. Besides, in this case the jury must have found against the pretentions of the defendant that the contract was conditional as claimed by him. Of course, if that evidence was of any probative value on any issue presented, it should have been admitted, but how it could throw any light on the questions before the jury we can not perceive.

The next complaint is that plaintiff was permitted to prove damages based on the average prices of gasoline during the year 1922. We think this assignment of error is not well founded in law or fact. The contract alleged, and as evidently found by the jury, provided a basic price of 14 cents per gallon at defendants shipping point in Kanawha County, but to go up or down with the tank wagon prices at Pittsburgh, as stated. This was the method by which the prices defendant was to receive were to be determined.

The contract prices to be paid by plaintiff and the market prices to be ascertained by trade regulation were liable to vary, and did vary, during the period covered by the contract. The contract called for delivery, not on any days certain, but during the year in about equal monthly installments. The evidence shows however, that there was no actual market for gasoline at defendant's plant or shipping station, or place of delivery. How then was any market price of gasoline at that point to be determined? The evidence shows that it had to be determined by trade usages, that is, by taking as the basis the Oklahoma Market Price, so-called, because the Oklahoma field is the greates producer of gasoline, and controls the market. The market prices elsewhere are determined by adding to the Oklahoma price the transportation cost from that field, esti-

mated at two cens per gallon. Where no market prices exist at the places of delivery, the rule is well established that other markets must necessarily be resorted to in determining the market value of a product. 24 R. C. L. p. 73 §338, and cases cited; Sedgwick on Damages, (9th ed.) §739; *Nottingham Ice & Coal Company* v. *Preas.* 102 Va. 820.

We think the evidence introduced on these questions of fact was competent. By this rule stated the evidence shows that plaintiff's actual loss from defendant's failure to deliver his product in accordance with the contract, assuming, as we may, that he had a market for the same at the prices prevailing in Pittsburgh and vicinity, ranged all the way from two cents to seven cents per gallon. The jury manifestly based their verdict on the lowest rate, on the admitted production of defendant's plant during the period covered by the contract. Defendant's counsel rely on the proposition, for which they cite authority, that where the subject matter of the contract is to be delivered in installments, the proper measure of damages is the sum of the differences between the contract and the market prices of the quantity of each installment delivered. Admitting this to be a correct proposition of law, how could it be applied in this case, where the contract provided no particular days for shipment, but only for monthly deliveries in about equal amounts? The question before the jury, the contract being established, was not what were the market prices of the gasoline on the dates defendant may have sold and delivered his product to some one else, but what was it at the time when it should have been delivered in equal monthly quantities to plaintiff. Besides, it seems to be settled law that the buyer, in such cases, is not required to go into the market and buy the goods contracted for, but may sue for the damages by way of profits which he would have made at prices obtainable at the time and place of delivery. 24 R. C. L. p. 69, §335. Our decisions say that in such cases absolute certainty as to the amount of damages is not required but that reasonable certainty only is necessary, and that substantial damages may be recovered, though the loss can be stated only approximately. *Hurxthal* v. *Boom Co.,* 65 W. Va. 346; *Manss-Owens Co·* v. *H· S. Owens & Son,* 129 Va. 183.

Another point of error urged is that defendant was not permitted to introduce evidence showing that immediately after his alleged contract with plaintiff, he contracted the same product for the year 1922 at a price two cents less than the price which plaintiff was to have paid him. Certainly such evidence would not be competent. He might have given away his product or sold it at prices very much under the market prices there or at the nearest available market. The proper rule for the measure of damages in cases of this kind, already alluded to, would exclude that class of testimony.

As bearing on the last inquiry it is insisted by defendant's counsel that the contract on his part was conditioned on his being satisfied as to the financial responsibility of plaintiff and as to his ability to perform the contract on his part. If such condition had been a part of the contract, defendant, in the absence of fraud or dishonesty on his part, would have been justified in this position. *Plumbing Co.* v. *Carr,* 54 W. Va. 272, and cases cited. But we do not recognize any correlative bearing which this proposition can have on the main proposition, for no such condition was contained in the memorandum contract introduced in evidence, and manifestly the jury did not find that any such condition was included in the contract as made. And when this excuse was afterwards suggested by defendant, plaintiff advised him that he might draw on him at sight for the contract price, with bill of lading attached. This would have insured payment for the gasoline, if defendant was in doubt of plaintiff's responsibility.

Another point of error is that the trial court refused to admit in evidence certain letters and telegrams identified as Defendant's Exhibits 13, 14, 15, 16, 17, and 18, These were all messages of defendant to plaintiff, dated after March 15, 1922, and related for the most part to defendant's demands for the price of the first car of gasoline and his excuse for not shipping plaintiff more gasoline and in so far as they related to the contract were self-serving declarations of defendant, which of course could not be admitted on the question of the fact of the contract. It is contended that these papers should have been admitted, if for no other reason, to show defendant's good faith in declining to carry out the contract.

He was permitted to testify orally and very fully as to his transactions with Howell and Reiser, and to give his reasons therefor, and why he had shipped the first car to plaintiff and had diverted the second load intended for him to a third party; and even if these messages of his were competent, we do not see how defendant was prejudiced by their rejection. Nor did this evidence tend in any way to rebut any of plaintiff's evidence. It was not denied that plaintiff, after defendant's refusal to perform the contract and to ship him the second car load of gasoline, withheld payment for the first load. In fact he so testified in chief. It is argued as plaintiff was allowed to introduce his letter of March 16, 1922, defendant was prejudiced by the rejection of his reply thereto, of March 18, 1922, Defendant's Exhibit No. 16. Plaintiff's letter to defendant notified him of his disappointment that he had used the car sent him for shipping his gasoline to another consignee, and that he was not living up to his contract, and explaining that it was for that reason he was withholding payment for the first car load, but proposing that if upon the return of that car defendant would load it promptly and ship it to one of the several consignees designated by him, he would, upon its arrival at destination and inspection, remit for the first car. Defendant's reply, in so far as it related to plaintiff's letter, might have been admitted with propriety; but it contained many self-serving declarations in addition, which were not admissible; and besides, we do not see how, with all his oral evidence in, he was prejudiced. It would have shed no additional light on the real issues before the jury. These rejected documents, containing as they did, declarations of the defendant after his breach of the alleged contract and his declination to fulfill the same, were properly excluded. *Corder* v. *Talbott*, 14 W. Va. 277; *Rowan* v. *Chenoweth*, 49 W. Va. 287, 292; *Hilleary* v. *Hubbell*, 119 Va. 123, 126:

The remaining propositions contended for, relate mainly to the instructions given and refused. On the first of the three main issues presented, the jury were correctly and fully instructed by defendant's instruction number one and plaintiff's instruction number six. The theories of both parties

were thereby clearly presented to the jury on the evidence adduced.

But it is urged by counsel for defendant that plaintiff's instruction number two, given, was wrong, and prejudicial. It plainly told the jury that plaintiff could not rely for recovery on the unsigned contract admitted in evidence; that it could only be considered as a part of the transaction between the parties at the time of the negotiations; but that if the jury found that said paper was read over to defendant correctly, or was read over by him, and was fully and fairly understood by him, and that he assented to and agreed to the terms therein stated, he was bound by those terms, and that his liability should be determined accordingly. This instruction seems to be in exact accord with the rule laid down in 2 Blashfield's Instructions to Juries, p. 1804, on the authority of *Osborne & Co.* v. *Simmerson*, 73 Iowa, 509. The written instrument was manifestly admitted in evidence as a part of the res gestae, and properly so, we think, because an incident to the transaction and in contemplation of law a part of it. 10 R. C. L. p. 981, §163, and cases cited. The instruction, we think, properly limited the effect of the document on the question as to what the contract in fact was.

It is next affirmed that plaintiff's instruction number five was erroneous and prejudicial. This proposition is predicated on defendant's theory, already disposed of, that the contract called for delivery of the gasoline in installments, and that plaintiff's refusal to make prompt payment for the first car load shipped constituted a breach thereof, and that he being the first to breach the contract, defendant was excused from further performance. The evidence justifies no such conclusion. As already shown, defendant withheld the bill of lading for the first car of gasoline for ten days, so that plaintiff could not get the consignment or deliver it to his customer, or collect the price. He manifested no intention to breach the contract in any way, nor did Lawrence do so until after he had notified plaintiff of the shipment to him of the second car, and thereafter consigned it to a third party, as already pointed out. In this act Lawrence evidenced his intent, fully confirmed by his subsequent conduct, to breach the contract, and

refused to be further bound thereby. This instruction simply told the jury that if they found the facts to be as just stated, defendant was not justified in refusing to ship any more gasoline until plaintiff should remit for the first car load of gasoline.

The next point involves plaintiff's instruction number nine; and the criticism of it is that it is abstract, and without any reference or application to the facts proven, as follows: "The court instructs the jury that a contract can be made, either orally or in writing, to which a condition may be attached, and that if the party required to fulfill such condition reasonably does so the contract will be binding from its inception and the other party can not arbitrarily refuse to proceed under the contract where the condition has been reasonably met." It is true this instruction is abstract in form, and in that respect may be defective, as counsel say; but as conceded, and as the authorities cited hold, it does not follow that such defect calls for reversal of the judgment. *Ross* v. *Lake & Export Coal Corp.*, 92 W. Va. 229. Manifestly this instruction was intended to cover defendant's theory that the contract contained a condition that he should be satisfied with the financial responsibility of the plaintiff, a theory which the jury evidently did not regard as well founded in fact; and also to cover the plaintiff's evidence that he was amply able, ready and willing to comply with every obligation on his part, and his financial responsibility to do so; and also his proposal to allow defendant to ship the gasoline with bill of lading attached to a sight draft for the price. The authorities cited and relied on by defendant's counsel, on the theory that the contract involved a condition that defendant was to be arbitrarily satisfied with plaintiff's credit, we think are not applicable. The facts in evidence did not satisfy the jury, and they do not satisfy us, that there was any such arbitrary condition agreed to. The inquiry was made, and the evidence is that Howell gave some references; and while the inquiries made by Lawrence elicited the fact that plaintiff was not strong financially, the evidence is abundant that he was an extensive dealer in gasoline, did a large business and had splendid credit. Besides, the pro-

posal of plaintiff to honor sight drafts with bill of lading attached was all that Lawrence could reasonably have required to satisfy any doubt he may have had as to plaintiff's ability to meet the payments for all consignments and to protect him therein. The cases referred to, of *Osborne & Co.* v. *Francis*, 38 W. Va. 312; *Barrett* v. *Coal. Co.*, 51 W. Va. 416; and *Plumbing Co.* v. *Carr*, 54 W. Va. 272, are all cases involving contracts giving the party affected the arbitrary right to be satisfied upon some one or all of the questions pertaining thereto, and which can have little, if any, application to the contract established by the evidence in this case.

The next question presented by defendant's counsel is whether the trial court improperly rejected his proposed fifth instruction. We think this question should be negatived. It was proposed thereby to tell the jury that if they found the contract was as claimed by defendant, and found that plaintiff was to pay for each car f. o. b point of shipment, 1% 10 days, and that he failed or refused to pay defendant for the first car shipped until defendant should ship a second car and sign a written contract, such refusal constituted a breach of the alleged contract by plaintiff, and justified defendant in refusing to proceed with the alleged contract, and the jury should find for him. The abstract proposition of law embodied in this instruction, as the cases cited show, may be correct, but the instruction is based on facts not sustained, even by defendant's evidence. It was not until after plaintiff had learned and had finally received the bill of lading for the first car, delayed by defendant for ten days, that the latter had repudiated the contract and had diverted the second car of gasoline elsewhere, that plaintiff notified him of his intention to withhold payment for the first car. But all the while he professed his willingness and ability to pay, not only for the first, but for all consignments if defendant would go ahead and fulfill the contract on his part. Under these circumstances the plaintiff was justified, we think, in withholding payment for the first car, until his damages were satisfied or he was assured in some way that defendant intended to fulfill the contract on his part. *Allen* v. *Simmons*, 90 W. Va. 774; 3 Williston on Contracts, §1468.

The general proposition particularly applicable to this case is that stated by Mr. Williston: ''A party who has himself been guilty of a substantial breach of a contract can not rescind the contract because of subsequent refusal or failure to perform by the other party.'' Plaintiff's right of action first accrued by defendant's breach of the contract. *Colby* v. *Reed,* 99 U. S. 560.

Another point of error is predicated on the rejection of defendant's eighth instruction to the jury. Its purpose was to advise the jury that if they should find that the contract as alleged was made by Howell for plaintiff, and that Howell misrepresented to defendant Reiser's financial responsibility or ability to furnish tank cars, and if they should believe that defendant would not have made such contract if such facts had not been misrepresented to him, then the defendant was justified in refusing to perform the contract, and their verdict should be for defendant. It is a sufficient reply to this proposition that there is nothing in the evidence on which to predicate the facts assumed in the instruction. It is based on a theory not advanced by defendant on the trial. True, some references were given him by Howell, and he made his own inquiries. This was all. That plaintiff had made ample provision to get cars for shipping him the gasoline is fully established by the evidence. And as to plaintiff's financial standing, Lawrence made his own investigation, and after doing so shipped the first car load of gasoline, and notified plaintiff that he had shipped the second in a car furnished by him. When one makes his own investigation, he can not be regarded as having relied on the other party. *Jones* v. *McComas,* 92 W. Va. 597.

We find no reversible error in the judgment, and our opinion is that it should be affirmed.

*Affirmed.*