# CHARLESTON.

Fuel Distributors, *Inc. v.* Payne-Baber Coal Company

(No. 6383)

Submitted April 30, 1929.     Decided May 7, 1929.
(Rehearing Denied July 17, 1929.)

*John T. Delaney,* for plaintiff in error.
*E. L. Hogsett* and *David F. Sheets,* for defendant in error.

WOODS, PRESIDENT:

The plaintiff filed its notice of motion for judgment by which it sought to recover damages from the defendant for the alleged breach of a contract to sell coal. Issue was joined on the counter-affidavit of the defendant and a jury trial had. The jury found for the plaintiff and defendant complains on the ground that the verdict was contrary to the law and the evidence.

The plaintiff's testimony was to the effect that the defendant entered into a contract whereby it agreed to sell plaintiff approximately five hundred tons (of ten carloads) of Elkhorn run of mine coal at the price of $2.00 per net ton f. o. b. mines to be shipped by way of the Chesapeake & Ohio Railway by the defendant from its mines located in Kentucky, to Lake & Export Coal Corporation, Newport News, Virginia, on the first day thereafter on which there was no embargo in effect on shipments to tidewater. At the time of this contract the defendant had notice that the plaintiff had a contract with the Lake & Export Coal Corporation for the re-sale of the coal which was the subject matter of the contract.

The defendant, on the institution of this action, took the position that it sold and contracted to ship to the plaintiff the number of cars of coal loaded by it on September 30, 1926, and that on that day it loaded four cars only. It shipped three of the four cars loaded on that day, and to make up the fourth, according to defendant's contention, it shipped two cars on October 14, 1926, and two cars on October 28, 1926. In other words, the defendant claimed that it had fully performed its part of the contract—in fact shipped more coal than it had contracted to do.

The correspondence and telegrams between the parties were introduced in evidence. The case was submitted to the jury, without instructions, and the jury found for the plaintiff in the sum of $538.63, and upon the plaintiff remitting ten cents per ton on the undelivered tonnage to compensate the defendant for the freight differential favorable to it, the motion to set aside the verdict and grant a new trial was overruled and judgment for the sum of $523.94 rendered in favor of the plaintiff.

Was the verdict supported by the evidence? After becoming advised that only three cars had gone forward, the plaintiff, on October 7th, wrote the defendant to ship the balance of the coal at the earliest date possible, and like demands were made from time to time. Some days prior to the shipment of the sixth and seventh cars, defendant reported three cars (which, if shipped, would raise the total to eight). Another request followed that report, asking that two cars be forwarded at once ''to complete'' the contract. In the meantime the shipment of the three cars was cancelled. The sixth and seventh car then went forward, as defendant says, ''to complete'' the contract. Defendant argues that the request just mentioned clearly shows that the plaintiff did not understand the contract to be for ten cars. Such a position, as we see it, is untenable. It was not shown that the plaintiff had notice of the cancellation of the three cars at the time of their last request. These three cars (had they been shipped) together with the sixth and seventh cars, when added to the five already delivered, would have made up the ten cars. The order sent the defendant in confirmation of the oral contract on September 30, 1926, the date the embargo lifted, supports the theory that the agreement was for approximately five hundred tons, or ten cars. This shows the consistency of the plaintiff's claim from the beginning. After the making of the contract to sell the coal at $2.00 per ton, the prices began to rise and at the time of the shipment of the last two loads of coal (cars six and seven) the defendant advised the plaintiff that they were getting $6.10 from everyone else for coal. It is a rule of universal application by the courts that the actions of parties under their contracts sometimes have a great deal of weight in showing what was meant by the terms thereof. They are far less liable to be mistaken as to the terms of their contract during a harmonious operation thereunder, than they are when subsequent differences impel them to resort to the law and one of them seeks to recover on the contract as he sees it. It is common sense that a company is not going to continue shipping coal to a purchaser when prices are soaring at a stipulated contract price when it is not bound to do so. The actions and communications of the controversialists all sup-

468

port the terms of the contract contended for by the plaintiff. It is a case where "Actions speak louder than words."

But the defendant further complains that conceding there was a breach of the contract, the proper measure of damages was not exacted by the jury. Generally, the measure of damages where a vendor fails to deliver goods sold is the difference between the contract price and the market value at the time when and the place where the goods should have been delivered; but if the time of delivery be postponed by agreement of the parties, express or implied, or by their acquiescence in such postponement to a subsequent date, the latter is to be considered as the time for the comparison of values. *News Publishing Co.* v. *Denison-Pratt Paper Co.*, 94 W. Va. 236. The account sued on by the plaintiff in the instant case, proceeded on the latter theory. The facts in this case warranted this action. The jury, who were not instructed as to the measure of damages, returned a verdict in accordance with the claim of the plaintiff. The fact, therefore, that the Export Company went into the market on the latter date and bought coal to replace the shortage occurring through the legal dereliction of the defendant did not act to the detriment of the latter. It was liable in damages to the difference between the contract price and the market value of the coal at the time and place where the Export Company made such purchase. The fact then of whether notice was given to the defendant of the proposed purchase becomes immaterial.

In view of what has been said it follows that the judgment should be, and it accordingly is, affirmed.

*Affirmed.*