GEORGE P. FRANKLIN *et al. v.* SILAS H. PENCE

(No. 9699)

Submitted September 25, 1945.   Decided December 11, 1945.

*W. A. Brown,* for plaintiff in error.

*Thomas L. Read,* for defendants in error.

HAYMOND, JUDGE:

This litigation is the outgrowth of a contract for the sale of lumber entered into between the plaintiffs, the purchasers, and the defendant, the seller, on April 3, 1943. At the trial, the jury returned a verdict for the plaintiffs for $800.00, upon which the court entered the judgment which the defendant seeks to reverse in this Court.

The plaintiffs, George P. Franklin and Nell L. Franklin, partners trading as George P. Franklin and Company, are lumber dealers with their office in the City of Huntington, West Virginia. At the time the contract in suit was entered into, the defendant, Silas H. Pence, had started to manufacture lumber from timber on about 950 acres of land in Summers County in this State. The transactions in connection with the contract were conducted with the defendant by George P. Franklin, in behalf of the plaintiffs.

On April 3, 1943, he called upon the defendant in Summers County, and, at that time, the defendant accepted and signed four written orders whereby he agreed to sell and ship to designated customers of the plaintiffs four separate lots or quantities of lumber. The first

of these orders, numbered 476, was for 30,000 feet of log run locust, to be shipped during May, 1943, to Pennsylvania Lumber and Post Company, a purchaser from the plaintiffs, at Hyndman, Pennsylvania, upon a sales commission of five per cent to the plaintiffs. The second order, numbered 477, called for 25,000 feet of walnut flitches, to be shipped to Amos Thompson Corporation, a customer of the plaintiffs, at Edinburg, Indiana, within thirty to sixty days of the date of the contract. The third order, numbered 478, called for 90,000 feet of mixed ash, basswood, poplar and cucumber, and hard and soft maple, in specified quantities, to be shipped to Daniel Buck, Inc., a customer of the plaintiffs, at Philadelphia, Pennsylvania, within thirty to one hundred, twenty days from the date of the contract. The fourth and last order, numbered 479 called for 15,000 feet of hickory, to be shipped to Case Crane Company, a customer of the plaintiffs, at Columbus, Ohio, but no shipping period was specified. By orders 477 and 479, the plaintiffs were required to pay the defendant the purchase price in cash when the lumber covered by each of these orders was loaded on railroad cars at Pence Springs, West Virginia. Order 478 specified no time or manner of payment of the purchase price for the lumber covered by it.

The defendant shipped none of the lumber mentioned in orders 476, 477 and 479, and only two cars, aggregating 20,651 feet, of the 90,000 feet, leaving an undelivered balance of 69,349 feet of the mixed lumber, required to be shipped under order 478. One of these cars was shipped October 8, 1943, and the other November 16, 1943, both of which dates were after the expiration of the period within which the shipments were required to be made by the terms of the signed order.

Though no method or time of payment was fixed by the terms of order 478, the plaintiffs gave, and the defendant accepted, sight drafts in payment of each of these cars. The draft for the first car was paid by the bank at Alderson, at which George P. Franklin had made arrangements to discount the drafts, and the defendant

received his money promptly. Through some misunderstanding in missending the draft to a bank in Philadelphia for collection from the drawee, the bank at Alder-' son was unable, until after a lapse of forty days, to obtain the funds which it had paid to the defendant; and thereafter it refused to discount any further drafts drawn by the plaintiffs. When the second car of lumber was shipped on November 16, 1943, the plaintiffs issued and delivered to the defendant, and he accepted, a sight draft for that load of lumber. He encountered some difficulty and delay in cashing the draft, and was unable to collect its proceeds for about twenty-two days. Thereafter, he refused to make any further shipments under the contract. He freely admits, and gives as his only excuse, that he feared or thought that he would not be paid by the plaintiffs for the undelivered amounts of lumber which he had agreed to ship on the contract. On this point, George P. Franklin testified that the defendant never gave any reason for not making the remaining shipments. After some communications had passed between the plaintiffs and the defendant, in which the plaintiffs called upon the defendant for further shipments and protested his refusal and delay, and the defendant having refused to perform, the plaintiffs instituted this action of assumpsit for damages for the alleged breach of the contract by the defendant.

Because the brief filed in behalf of the defendant contains no assignments of error, and the assignments in the petition for the writ of error are general in character, it is difficult to determine the exact points relied upon for reversal. The statements in the brief are considered as indicating that the main grounds of attack upon the judgment are: (1) The plaintiffs, in permitting a delay of twenty-two days in the payment of the draft given for the second car of lumber, breached the contract, and, for that reason, can not maintain this action; (2) the court erred in admitting evidence in behalf of the plaintiffs as to the amount of commission claimed by them of $105.00, because of the failure of

the defendant to ship the lumber required by order 476; (3) the court erred in adopting an improper measure of damages in the case; and (4) the court erred in refusing to give four of the five instructions offered by the defendant. These questions will be considered in this order.

Order 478, under which the second carload of lumber was shipped, made no provision for the method or the time of payment by the plaintiffs. On this point the evidence is conflicting. George P. Franklin testified that he and the defendant agreed that the plaintiffs, in making payment, should have the option of paying cash or giving a sight draft for the price of the lumber as it was shipped. The defendant denies that such was the agreement and testified that payment was to be made in cash. On this question the jury found in favor of the plaintiffs, and that finding will not be disturbed by this Court. *Stephens* v. *Bartlett*, 118 W. Va. 421, 191 S. E. 550; *Aliff* v. *Berryman*, 111 W. Va. 103, 160 S. E. 864; *Fuel Distributors* v. *Payne-Baber Coal Co.*, 107 W. Va. 465, 148 S. E. 854; *Wingo Mining Co.* v. *Flanagan Coal Sales Co.*, 93 W. Va. 76, 115 S. E. 839; *Manufacturing Company* v. *Smith*, 79 W. Va. 736, 91 S. E. 817. Furthermore, the evidence is to the effect that the defendant, having received the proceeds of the draft for the first carload, accepted the draft for the lumber shipped on November 16, 1943, without objection or protest, and, though he encountered a delay of twenty-two days in cashing the draft, he did receive and retain the full amount of the purchase price for all the lumber which he shipped. If the delay upon the part of the plaintiffs in making the payment for the second carload of lumber constituted a breach of the contract upon their part, they can not maintain this action for damages resulting from the breach of the contract upon the part of the defendant. When the covenants are dependent and mutual, as here, a party who violates the contract can not recover damages which result from its violation by the other party. 13 C. J. 567, 568, 569; 12 Am. Jur. 894;

*Jones* v. *Kessler*, 98 W. Va. 1, 126 S. E. 344; *Johnson*. v. *Hoffman*, 130 Va. 335, 107 S. E. 645. But this principle does not apply to the facts of this case. The delay in the payment of the draft, in the circumstances disclosed by the evidence, did not constitute a violation of the contract by the plaintiffs, or excuse its nonperformance by the defendant. The failure of the defendant to perform his promise to ship the lumber required to be shipped by him is clearly established. His failure to perform is not denied, but is, in fact, admitted by the defendant. The failure and the refusal of the defendant to perform amounted to a repudiation of the contract by him, and constituted a breach on his part, which entitled the plaintiffs to sue for the profits they would have realized if they had not been prevented from performing the acts required of them. The time of performance by the defendant having expired, the plaintiffs had an immediate right of action for damages for the profits of which they were deprived by the default of the defendant. 12 Am. Jur. 964, 965, 967; *Bare* v. *Coal & Coke Co.*, 73 W. Va. 632, 80 S. E. 941; *Atlantic Bitulithic Co.* v. *Edgewood*, 103 W. Va. 137, 137 S. E. 223; *Catlett* v. *Bloyd*, 83 W. Va. 776, 99 S. E. 81.

The defendant complains of the action of the trial court in permitting the plaintiff, George P. Franklin, over the objection of the defendant, to testify that the plaintiffs sustained damages in the amount of $105.00 for loss of the stated commission of five per cent on' the selling price of the lumber covered by order 476. This, he insists, was reversible error. As the defendant had the right to ship different grades of lumber of different value, under the order, the witness was unable to fix exactly or with certainty the amount of the commission which the plaintiffs would have earned if the shipments called for, and which were not made by the defendant, had actually been made. The evidence on this point was based on an estimate by the witness, was entirely speculative, and should not have been admitted. The amount of the claim of the plaintiffs, including the above esti-

mate, was $1,423.50. Deducting the $105.00, claimed as commission, from that amount, the residue of the claim is $1,318.50. As to that sum, the plaintiffs introduced substantial evidence, which was not contradicted by any other evidence in the case. It is, we think, fair to infer that the verdict of the jury for $800.00, which was $518.50 less than the amount which was supported by competent evidence, did not include any part of the item of commission of $105.00, and that the jury did not consider or allow any part of that item in arriving at the verdict. For this reason, the estimate of that amount was not prejudicial to the defendant and did not constitute reversible error. *Neill* v. *Insurance Co.*, 119 W. Va. 694, 195 S. E. 860; *Hall* v. *Lyons*, 29 W. Va. 410, 1 S. E. 582; *State* v. *Yates*, 21 W. Va. 761.

On the question of damages the plaintiffs offered, and the court admitted, over objections of the defendant, evidence to the effect that the plaintiffs could and would have sold, for variously stated amounts in excess of the contract price, the unshipped quantities of lumber required by the contract to be shipped by the defendant, and that this failure of the defendant to make shipments of the lumber resulted in loss of the plaintiffs in the amount of $1,318.50. The evidence of the plaintiffs to sustain that claim consisted mainly of written orders from customers of the plaintiffs to purchase the undelivered lumber at amounts in excess of the purchase price provided in the contract. The evidence showed that, in consequence of the defendant's breach in failing to ship the material which he agreed to ship, the plaintiffs were deprived of profits to the extent of the difference between the contract price and the higher price at which the plaintiffs were able to sell the lumber to their customers from whom they received such orders of purchase. The defendant contends that this evidence is insufficient to show the market value of the lumber which the plaintiffs could have sold, that the measure of damages in this case is the difference between the contract price and the market value of the lumber, and that the claim for loss

of profits is too uncertain and speculative to warrant a recovery by the plaintiffs.

Here the evidence is undisputed that the plaintiffs could and would have sold the undelivered lumber to purchasers who agreed to buy it at a price which would have resulted in a total profit to the plaintiffs of $1,-318.50, and that the defendant's failure and refusal to make the required shipments resulted in loss to the plaintiffs of profits in that amount. No effort was made by the defendant to controvert this evidence. The profits were not uncertain or speculative. They were definitely fixed and determined by evidence which the defendant did not attempt to rebut. Profits which can be ascertained with reasonable definiteness are not speculative, are proper elements of damages for breach of contract, and may be recovered. 15 Am. Jur. 561, 562, 563; 25 C. J. S. 519, 521; *Belcher* v. *King,* 96 W. Va. 562, 123 S. E. 398; *Berry* v. *Temple Assn.,* 80 W. Va. 342, 93 S. E. 355; *Smith* v. *Coal Co.,* 66 W. Va. 599, 66 S. E. 746; *Barrett* v. *Coal & Coke Co.,* 55 W. Va. 395, 47 S. E. 154; *James & Mitchell* v. *Adams,* 8 W. Va. 568. The evidence in behalf of the plaintiffs showed that they had valid orders which, if executed by them, would have resulted in profits of $375.00 on order 477, $793,50 on order 478, and $150.00 on order 479, or a total of $1,318.50; and these amounts were established with reasonable certainty.

The proper measure of damages in this case is the difference between the contract price and the market value of the lumber at the time and the place of delivery called for by the contract. *Reiser* v. *Lawrence,* 96 W. Va. 82, 123 S. E. 451; *Fuel Distributors* v. *Payne-Baber Coal Co.,* 107 W. Va. 465, 148 S. E. 854; *Brooke County Court* v. *U. S. Fidelity & Guaranty Co.,* 95 W. Va. 439, 121 S. E. 422; *News Publishing Co.* v. *Denison-Pratt Paper Co.,* 94 W. Va. 236, 117 S. E. 920; *Watson* v. *Buckhannon River Coal Co.,* 95 W. Va. 164, 120 S. E. 390; *Elias & Brother* v. *Boone Timber Co.,* 85 W. Va. 508, 102 S. E. 488; 2 Williston on Sales (2d Ed.), paragraph 599; Sales,

24 R. C. L., paragraph 335. When there has been a breach of the contract by the seller, as here, the plaintiffs, the purchasers, were not required to go into the market and buy the lumber contracted for, but may sue for the damages represented by the profits which they would have received if the lumber had been delivered by the shipments at the time and the place designated in the contract, which shipments the defendant refused to make. *Reiser* v. *Lawrence*, 96 W. Va. 82, 123 S. E. 451; *Sterling Organ Co.* v. *House*, 25 W. Va. 64. The prices contained in the orders which the plaintiffs received from the purchasers from them, in the absence of any evidence to the contrary, sufficiently establish the market value of the unshipped lumber at the place and within the period provided by the contract for its shipment. Market value may be established, under proper conditions of time and place, by the price at which a seller who is willing to sell, and a buyer who is willing to buy, effect a sale of property when both act voluntarily and without compulsion. The market value of the lumber, at the time it was required to be shipped, is the price at which it could have been sold by persons desirous of selling to persons wishing to buy, none of them acting under compulsion and all exercising intelligent judgment. *B. & O. Railroad Co.* v. *Bonafield's Heirs*, 79 W. Va. 287, 90 S. E. 868. It is the price which the lumber will bring when it is offered for sale by those who desire, but are not obliged, to sell, and is bought by those who are under no necessity of buying it. *Guyandot Valley Railway Co.* v. *Buskirk*, 57 W. Va. 417, 50 S. E. 521. Here, without any proof in support of a contention to the contrary, it may be presumed that the prices at which the purchasers from the plaintiffs would have bought the undelivered lumber which the defendant refused to ship, represented and established its market value for the purpose of measuring the damages which the plaintiffs sustained. It is true that the plaintiffs did not buy on the market the equivalent of the unshipped lumber which the defendant was bound to ship under the contract; but the plaintiffs were not required to do

this. The difference between the contract price and the market value of the unshipped lumber measures the profits of which the plaintiffs have been deprived by the breach of the contract by the defendant. Sales, 24 R. C. L., paragraph 335. These profits, which represent the amount of the loss to the plaintiffs, and which, as before stated, the evidence establishes with reasonable certainty, constituted the damages which the plaintiffs seek to recover from the defendant in this action.

The defendant asserts that the refusal of the trial court to give to the jury Instructions Numbers 1, 2, 3 and 5, requested by him, constitutes reversible error. Instruction No. 1 would have told the jury that before the plaintiffs could recover the item of commission claimed by them, they were required to prove by a preponderance of the evidence that they procured and produced to the defendant a purchaser who was ready, willing and able to fulfill the written contract between the plaintiffs and the defendant. The language of this instruction misstates the terms of the contract, as indicated by the evidence, and for that reason it was properly refused. Instructions should be based upon and correctly state the evidence. *State* v. *Davis*, 52 W. Va. 224, 43 S. E. 99; *Campbell* v. *Hughes*, 12 W. Va. 183. Moreover, it is evident that the jury did not allow or include in the verdict the item of commission embraced in the claim of the plaintiffs, and for that reason the refusal of the court to give the instruction resulted in no prejudice to the defendant.

Instructions Nos. 2 and 3 would have told the jury, among other things, that it was incumbent upon the plaintiffs to pay cash for the lumber shipped to them by the defendant, under order 478, and that if it was not so paid for by the plaintiffs, the defendant was not bound to complete the order. In that particular the instructions ignored the plaintiffs' theory of the case, which was supported by the evidence and believed by the jury, to the effect that the contract gave the plaintiffs the option to pay for the lumber, when shipped, in

cash or by sight draft, and assumed as true a disputed issue of fact. An instruction which assumes as true facts concerning which the evidence is in conflict should not be given. *Bentley* v. *Insurance Co.*, 40 W. Va. 729, 23 S. E. 584; *Carrico* v. *Railway Co.*, 39 W. Va. 86, 19 S. E. 571; *Nicholas* v. *Kershner,* 20 W. Va. 251; 53 Am. Jur. 477, 478. It was not error to refuse these instructions.

By Instruction No. 5, the court would have told the jury that the order given by the plaintiffs should be construed, in connection with the contract between the parties, as introduced in evidence, and with all the other evidence in the case, and that before the plaintiffs could recover the jury must believe, from a preponderance of the evidence, that the plaintiffs had complied with every substantial condition provided for in the contract, unless the jury should also believe that the defendant waived the contract. The reference in the contract to the order, without further specification, is ambiguous, as there were four written orders embraced in the contract. Presumably it was intended to mean order 478, which did not specify the time or the manner of payment of the purchase price; but another order, 479, specified no time for the shipment of the lumber covered by it. The other two orders, 476 and 477, were complete as to form and content. As to what the unwritten terms of the contract were concerning the time and the method of payment for the lumber embraced in order 478, the evidence was in dispute, that offered by the plaintiffs being to the effect that they were given the option of paying in cash or by sight draft, and that of the defendant being that payment was to be made in cash.

The law is well settled that it is the duty of the trial court to construe a written contract sued on, if it be susceptible of construction, and to instruct the jury what their finding should be under the contract as construed. When the written contract is ambiguous and uncertain, parol evidence is admissible to show the situation of the parties, the surrounding circumstances at the time of

the writing, and the practical construction given to it by the parties. Even then, if the parol evidence be not in conflict, the duty remains with the court to construe the writing. When, however, the oral evidence is in conflict, as here, on the question of the time and the manner of payment, the determination of its meaning on that point should be submitted to the jury under proper instructions. *Stephens* v. *Bartlett*, 118 W. Va. 421, 191 S. E. 550; *Stewart* v. *Steel Corporation*, 100 W. Va. 331, 130 S. E. 447; *Watson* v. *Buckhannon River Coal Co.*, 95 W. Va. 164, 120 S. E. 390; *Franklin* v. *Lumber Co.*, 66 W. Va. 164, 66 S. E. 225. The equivocal language of the instruction in failing to specify the identical order to which it might properly have referred, gives it the vice of ambiguity. Within the above stated principles it could properly have applied only to orders 478 and 479, which were incomplete in the particulars already pointed out; but it could not properly apply to either order 476 or order 477, as they were completely written and free from omission or uncertainty. If the various orders were subject to the application of different principles of law, the failure of the instruction to identify the order to which it was intended to refer renders the instruction ambiguous and misleading. An instruction which tends to mislead and confuse the jury should be refused. *Wilson* v. *City of Elkins*, 86 W. Va. 379, 103 S. E. 118; *Laraway* v. *Croft Lumber Co.*, 75 W. Va. 510, 84 S. E. 333; *Mylius* v. *Lumber Co.*, 69 W. Va. 346, 71 S. E. 404; *Walker v. Strosnider*, 67 W. Va. 39, 67 S. E. 1087; *Stewart* v. *Doak*, 58 W. Va. 172, 52 S. E. 95. The fatal defect above pointed out vitiates the entire instruction; but the remaining portions, which, if standing alone, would have been proper, are, in substance, embodied in Instruction No. 4, which was given by the court. The duplication of instructions is unnecessary and undesirable. *Robertson* v. *Hobson*, 114 W. Va. 236, 171 S. E. 745; *Drake* v. *Hardware Co.*, 110 W. Va. 63, 157 S. E. 35.

As no error prejudicial to the defendant appears in the

case, the judgment of the Circuit Court of Summers County is affirmed.

*Affirmed.*