UNITED STATES of America For Use and Benefit of ST. PAUL A.M.E. CHURCH HOUSING CORPORATION, a non-profit corporation, and St. Paul A.M.E. Church Housing Corporation, a non-profit corporation, Plaintiffs,

v.

BUCKEYE UNION INSURANCE COMPANY, a corporation, et al., Defendants,

v.

UNITED STATES of America, Intervening Plaintiff.

Civ. A. No. 73–163.

United States District Court, S. D. West Virginia, Charleston Division.

Aug. 16, 1974.

John L. Boettner, Jr., John H. McCutcheon, Charleston, W. Va., for plaintiff St. Paul A. M. E. Church.

John A. Field, III, U. S. Atty., Charleston, W. Va., for intervening plaintiff United States.

John R. Hoblitzell and George S. Sharp, Charleston, W. Va., for Buckeye Union Ins.

William R. Pfalzgraf, Parkersburg, W. Va., for defendant Morlang.

MEMORANDUM ORDER

HALL, District Judge.

This action involves a contract for construction of the Overlook Housing Project, described in the complaint as a "low income rent supplement housing development," at Charleston, West Virginia. The plaintiff owner of the project is the St. Paul A. M. E. Church Housing Corporation, a non-profit corporation chartered under West Virginia Law. The building contractor is defendant Theodore D. Morlang. The surety on the contractor's performance bond is defendant Buckeye Union Insurance Company. The United States of America is an intervening plaintiff, representing the Secretary of Housing and Urban Development acting by and through the Federal Housing Commissioner.

The following excerpts from the intervening plaintiff's amended complaint in intervention state briefly the basics of the project organization.

6. . . . that prior to August 16, 1969, the Housing Corporation entered into, preliminary negotiations to secure financing for the construction of a low income rent supplement housing development on Hanna Drive, in the City of Charleston, Kanawha County, West Virginia, which said project was to be known as the Overlook Housing Project; and that as a result of said negotiations, the Federal Housing Administration, an administrative agency of the United States Government, hereinafter called FHA, approved the project and agreed to insure a loan which the Housing Corporation was to obtain for the financing of the Overlook Housing Project.

7. The plaintiff in intervention states that after the approval of the housing project by FHA, the Housing Corporation negotiated a contract with the defendant, Morlang, for the construction of the Overlook Housing Project, which contract was dated August 19, 1969, and provided for completion of the project by July 15, 1971, at a total cost of $2,464,940.00, and failing to complete the project on that date the defendant, Morlang, under the terms of the construction contract, was to forfeit and have deducted from the total cost of the project the sum of $788.56 as liquidated damages for each day of delay after July 15, 1971, until substantial completion of the housing project. . . .

8. The plaintiff in intervention states that the National Housing Act, 12 U.S.C. § 1701 et seq., and rules and regulations promulgated thereunder by the FHA require the contractor to provide performance and payment bonds in the form of a corporate surety to assure completion of the housing project to be approved by the FHA.

By petition dated February 28, 1969, the St. Paul A. M. E. Church, an established church congregation, petitioned the City of Charleston to rezone, from Residence "B" to Residence "C", 22.21 acres of land located in the Eighteenth Ward of the City for purposes of building "a number of low-cost public apartment house units for rental." A church may not be incorporated under West Virginia law. West Virginia Constitution, Article VI, Section 47; W.Va.Code, § 31–1–4. By resolution of April 14, 1969, the City's Board of Zoning Appeals granted permission to St. Paul A. M. E. Church Housing Corporation, not at that time incorporated, to construct the group housing project on the 22.21 acres of land, provided the Corporation acquired title to the land. The land was then owned of record by Shawnee Realty Company which conveyed the land by deed of June 10, 1969, to Theodore D. Morlang. By deed of June 11, 1969, Theodore D. Morlang and wife conveyed the land to St. Paul A. M. E. Church Housing Corporation which was incorporated by charter issued by the Secretary of State of West Virginia on May 5, 1969. The consideration shown to have been paid by the Housing Corporation to the Morlangs for the land was $87,828.-00.

The Housing Corporation's charter states the following corporate objects:

(A) To provide, on a nonprofit basis, housing for low and moderate income families, especially those displaced by urban renewal areas or as a result of governmental action, where no adequate housing exists for such groups, pursuant to Section 221(d)(3) of the National Housing Act, as amended.

(B) The Corporation is irrevocably dedicated to, and operated exclusively for non-profit purposes; and no part of the income or assets of the Corporation shall be distributed to or inure to the benefit of, any individual.

On August 19, 1969, the following instruments relating to the housing project are shown to have been executed:

1. Construction Contract by St. Paul A. M. E. Church Housing Corporation, as Owner, and Theodore D. Morlang as Contractor.

2. The contractor's performance bond, executed by Theodore D. Morlang, contractor, and Buckeye Union Insurance Company, surety, in the amount of the housing project contract price, $2,464,940.00, for benefit of the owner, the Housing Corporation, and the lender, Prudential Insurance Company of America.

3. Regulatory agreement for non profit and public mortgagors under the National Act, between the Housing Corporation and the Federal Housing Commissioner, relating to insurance covering the mortgage loan for $3,285,500 for the project from Prudential Insurance Company of America.

4. Building loan agreement, relating to the $3,285,500 loan, executed by the Housing Corporation as borrower and Prudential Insurance Company of America as lender.

5. Deed of Trust and Deed of Trust Note covering the $3,285,500 loan from Prudential Insurance Company of America, executed by the Housing Corporation, by William L. Lonesome, President.

6. Rent Supplement Contract, relating to financial assistance to the housing project to consist of 250 units at a mortgage cost of $3,285,500, insured under the National Housing Act, executed by the Housing Corporation and the Federal Housing Commissioner. 12 U. S.C., § 1701 et seq.; 24 C.F.R., Part 215, Rent Supplement Payments.

7. Application for Insurance of Advance of Mortgage Proceeds covering advance of funds totalling $488,390, executed by Prudential Insurance Company of America; Certificate of Mortgage Insurance, executed by Federal Housing Administration; request for advance payments of $488,390, executed by the Housing Corporation; and architect's certificate, executed by Harry E. Homan, architect. The sum of money advanced, $488,390, included the sum of $87,828 paid by the Housing Corporation to the Morlangs for the land on which the housing project was to be constructed.

The language contents and the obligations of these instruments are significant in the resolution of issues relating to the measure of damages, now before the Court for decision and ruling.

The contractor was obliged to furnish all materials and perform all of the work for construction of the housing project in accordance with drawings and specifications prepared by Harry E. Homan and James F. Robinson, with Harry E. Homan being designated as architect administering the construction contract. The work was to commence within 30 days from the date of the contract and was to be completed by July 15, 1971, subject to daily liquidated damages of $788.56 for each day's delay in completion. Each month after commencement of the work the contractor was obliged to make a request to the owner for payment for the work done during the preceding month. In the event the owner failed to perform its obligations to the lender, the lender might elect to undertake to complete the project, but, if the lender elected not to undertake comple-

tion of the project, the contractor's obligations under the contract would terminate. Under terms of the building loan agreement between the borrower Housing Corporation and the lender, if the borrower ceased work on the project for a period of more than twenty days or failed to construct the project in accordance with the drawings and specifications, the lender might terminate the loan agreement. The contractor was obliged to perform all work in compliance with controlling codes, laws and ordinances.

Vagueness in depositions and lack of good memory by some deponents are manifest in materials presented to the Court. Some significant facts emerge. The land site was found unsuitable for the project as planned. Sites for seven buildings were found unsatisfactory. The seven buildings represented thirty-five housing units, reducing the contract total of units from 250 to 215. The land survey was challenged as to correctness. Work stoppages resulted. The owner's unhappiness is manifest in a letter from William L. Lonesome, then president of the Housing Corporation, to the contractor, dated February 13, 1970. A letter, dated January 6, 1971, from H. William Rogers, Federal Housing Administration Director, to the lender, states:

Today we made a cursory inspection of this job and found that no progress had been made since October 27, 1970, which indicates "Work Stoppage" at this point.

Apparently the job is more or less abandoned since there is no indication of a watchman on the site, many windows broken and serious erosion of new fills around some of the buildings which should be taken care of before floors and foundations are further damaged.

Inasmuch as this work is being financed with insured advances, I wish to emphasize, especially to the mortgagee, the fact that a work stoppage continuing for a period of twenty days or more gives rise, at its option, to a default under the mortgage.

It is imperative that this office be. informed at once as to reasons why this condition exists and what efforts are being made to resume construction.

Negotiations and conferences on project changes did not accomplish results conducive to completion of the housing development. A letter, dated February 10, 1972, from Theodore R. Robb, Federal Housing Administration Regional Administrator, to the lender, Prudential Insurance Company of America, and to the Housing Corporation contains the following statements:

Subject: Overlook Housing
045–35016–NP–SUP
Charleston, West Virkinia

A thorough review has been made of your recent proposal and the Charleston Insuring Office's processing concerning the above-captioned project.

The following pertinent information was considered in reaching our conclusion:

1. The area to be occupied by the proposed 25 buildings consists of deep fills and rock cuts which contribute to severe foundation and site problems and excessive costs. The topographical maps submitted are unreliable.

2. Entrance road (Hanna Drive) from Washington Street to station 2 + 10, beginning of project, a distance of about 3,500 feet will require major improvement, at severe costs (approx. $200,000) which is an off-site cost, and can not be included in mortgage proceeds.

3. Other off-site land improvement is estimated at approximately $181,-000.

4. An increased rent supplement allocation of $47,926 would be required to support the new proposal for 35 less units than the original proposal for 35 less units than the original proposal which would

result in increases in the market rentals ranging from $20.00 to $53.00 PUPM.

5. The marketability of these units would be adversely effected since the tenant's share of rentals would exceed that which he would have to pay for superior accommodations at more desirable locations in the Charleston area for two projects comprising 150 units scheduled for completion at about the same time this project would be available to the market.

Predicated on our comprehensive analysis, this proposal is not feasible and therefore must be considered as rejected.

In addition by reason of a number of defaults, no further advances will be insured. We have been lenient in affording the parties opportunity to arrive at a solution to the problems that have beset this undertaking. However, we have now concluded that to proceed further could only result in greater loss to the Commissioner.

Among the defaults is the contractor's failure to complete construction by July 15, 1971 as called for by the Construction Contract.

Mr. Robb, at page 78 of his deposition of February 13, 1974, responding to questions involving the housing project problems, stated:

In effect, I felt that all the blame did not rest on the shoulders of Mr. Morlang, and that in fact that blame had to be shared by the sponsor and by HUD. And it was there conceived that we develop or explore an alternative based on the fact that Mr. Morlang was out-of-pocket on costs and was being penalized because of a combination of actions.

A Termination Agreement, dated July 18, 1972, executed by William L. Lonesome, who was then president of the Housing Corporation, and the contractor, Theodore D. Morlang, purporting to terminate the project contract and relieve the parties of liability thereunder, has been heretofore invalidated by the Court's order of May 17, 1974, but the instrument points up unhappiness concerning project developments.

A series of inspection memoranda, made by construction analysts for the Federal Housing Administration during the early months of 1971, indicates deficiencies and the need for change orders.

The Building Inspector of the City of Charleston gave written notice, dated February 3, 1972, to "forthwith cease and desist the work of construction on the 'Overlook Housing Project' . . . for reason that said work is being done contrary to the provisions of the building code and ordinances of the City of Charleston. . . . "

By assignment dated September 7, 1972, the lender, Prudential Insurance Company of America, pursuant to provisions of the National Housing Act, assigned the deed of trust to the Secretary of Housing and Urban Development, reciting in the instrument that the deed of trust and the note thereby secured were in default. The new holder of the trust deed and note caused the housing project property to be advertised for public sale on January 28, 1974, but on motion of the Housing Corporation, owner of record of the legal title, sale of the property was enjoined by the Court's order of January 25, 1974.

At a pre-trial conference on May 17, 1974, issues were clarified and the action was developed for trial, subject to the Court's decision and ruling on the "measure of damages to be applied to the plaintiff, the St. Paul A. M. E. Church Housing Corporation." By stipulation of May 30, 1974, the parties agreed to submit any remaining issues to trial by the Court in lieu of a jury as previously demanded.

█ Counsel have submitted briefs and memoranda on the measure of damages which plaintiff Housing Corporation may properly claim and recover in this action in its present posture. That issue is now before the Court for decision.

Counsel for plaintiff Housing Corporation in their memorandum state it "is clear that specific performance as a remedy for the plaintiff is not available." The plaintiff claims the right to recover all cost and damage suffered by reason of the failure of the contractor to complete the housing project and expresses the intent to complete the project "according to the original plans and specifications." Plaintiff's claim embraces liquidated damages caused by delays in completion of the project, the debt owed to the Federal Housing Administration, and the amounts contemplated to have accrued under the rent supplement contract, together with interest properly accruing on the penal sum of the performance bond. Their reply brief advances like contentions.

Defendant Morlang reasons that the Housing Corporation, a non-profit corporation, is not entitled to recover and may not recover windfall profits as a result of any breach of the construction contract. It is the contractor's position that, when the insurer, the Federal Housing Commissioner, has been reimbursed for any obligations or payments attributable to any contract breach, the Housing Corporation's recovery of damages for any breach of contract will be minimal.

Defendant Buckeye Union Insurance Company, the bond surety, concurs in the position that the insurer, the Federal Housing Commissioner, is to be reimbursed, but otherwise concludes in its memorandum as follows:

The St. Paul A. M. E. Church Housing Corporation has lost nothing as a result of the failure to complete the project. The plaintiff was the donee of a 100% financed rent-supplement housing project subject to a forty (40) year mortgage. The present value of such a donation is pure speculation and therefore not compensable.

Any recovery by the plaintiff amounts to a windfall thus this defendant respectfully urges the Court to dismiss any claim for damages by the plaintiff, the St. Paul A. M. E. Church Housing Corporation.

The intervening plaintiff, the United States of America, having by its amended complaint in intervention impleaded the Housing Corporation as a party defendant, states its claim in the pre-trial order as follows:

### Statement of Claim of Intervening Plaintiff

Due to the default and breach of contract of defendant Morlang, the United States of America was caused to pay the mortgagee, Prudential Insurance Company, the approximate sum of One Million Dollars, because of its insurance agreement. As a result thereof, the United States is entitled to recover from the plaintiff and defendants the amount of its pay-out plus interest and reasonable costs and attorneys fees.

It may be noted also that defendant Theodore D. Morlang, in his Sixth Defense in his answer to the intervening plaintiff's amended complaint, states a counterclaim for sums totalling $2,400,000 against the United States of America.

Upon consideration of the entire record in the action, the Court finds and concludes:

1. St. Paul A. M. E. Church Housing Corporation, a West Virginia non-profit corporation with charter limitations, now both a party plaintiff and a party defendant in the action, may not monetarily profit from the Overlook Housing Project. The Housing Corporation has no monetary investment in the project and may not recover profits therefrom as damages. The $87,828 consideration shown to have been paid by the Housing Corporation for the 22.21 acres of land, the housing project site, was a part of the advance funds provided by the lender, Prudential Insurance Company of America, and covered by the Certificate of Mortgage Insurance, dated August 19, 1969, and executed by the Federal Housing Administration.

2. Plaintiff Housing Corporation's counsel in their memorandum state that "specific performance as a remedy for

plaintiff is not available." Nor is completion of the housing project feasible or practicable under the terms of the construction contract of August 19, 1969, in accord with the designs and plans therein provided, on the site selected and purchased therefor. Facts, opinions, decisions and action by parties in the transaction establish that planning, architectural, engineering, topographical, geological, economic and governmental factors, by their individual and collective overwhelming weight, preclude completion of the project on the site as initially contemplated.

3. In the context of the action as presented, plaintiff Housing Corporation may not claim and recover as damages any financial benefits under contract provisions relating to liquidated damages for delays in completion of the project, under insurance coverages provided by the Federal Housing Administration, or under the rent supplement agreement based on provisions of the National Housing Act. Nor will plaintiff Housing Corporation be entitled to recover interest on any sums covered by contractor's performance bond. Howard v. Stillwell and Bierce Manufacturing Co., 139 U.S. 199, 11 S.Ct. 500, 35 L.Ed. 147 (1891); Gurney Industries, Inc. v. St. Paul Fire and Marine Insurance Co., 467 F.2d 588 (4th Cir. 1972); Systems Corporation v. American Telephone & Telegraph Co., 60 F.R.D. 692 (S.D.N.Y. 1973). In Haddad v. Western Contracting Co., 76 F.Supp. 987, 990 (N.D.W. Va.1948), the Court's opinion in the following language is here pertinent:

> The early American and English cases excluded prospective profits altogether in actions for breach of contract because of their uncertainty. But these decisions are no longer followed. Profits which have been lost as a natural consequence of a breach of contract can now be recovered but there can be no recovery if such profits are uncertain, contingent, conjectural or speculative. This means that where it is uncertain whether any profits at all would have been made by plaintiff such profits are speculative

and no recovery for loss of profits will be allowed. . . .

See also Franklin v. Pence, 128 W.Va. 353, 36 S.E.2d 505 (1945); Boggs v. Duncan, 202 Va. 877, 121 S.E.2d 359 (1961); Restatement of the Law, Contracts § 331(1); 22 Am.Jur.2d, Damages, § 174 (1965); 13 Am.Jur.2d, Building and Construction Contracts, § 48 (1964).

■ 4. Architects and engineers employed by the owner of a building project are agents of the owner. 24 Am. Jur.Proof of Facts 285–292 (1970); 5 Am.Jur.2d, Architects, § 6 (1962).

5. Counsel for the parties, in the pre-trial order, have made the following stipulation of facts:

### Stipulation of Facts

(a) The housing project was not completed in accordance with the plans and specifications and terms of the construction contract.

(b) That the United States of America paid the approximate sum of One Million Dollars to Prudential Insurance Company as a result of its insuring agreement.

(c) The St. Paul A. M. E. Church Housing Corporation defaulted in the payment of the mortgage loan to Prudential Insurance Company.

6. The only issue for decision by the Court at this time relates to the theory or theories upon which damages in this action may be determined and recovered by plaintiff Housing Corporation.

7. Ultimate issues of law and fact for decision by the Court upon submission of the case at a later time are stated by counsel for the parties in the pretrial order. Decision and judgment on these issues will await further development of the record evidence.

Upon the present record and upon the foregoing findings and conclusions and in consideration of the briefs and memoranda of counsel for the parties to the action, it is

Adjudged and ordered that the plaintiff, St. Paul A. M. E. Church Housing Corporation, may recover damages ac-

tually and factually arising from any breach of contract herein found to inure to said plaintiff's benefit and lawfully within its charter limitations as a non-profit corporation. Issues as to any breach of contract and the causes and responsibility therefor are yet to be determined.

The basic ruling in this Memorandum Order relates to the measure of damages plaintiff Housing Corporation may be entitled to recover in the action. The Court is of the opinion that this order on this issue involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, including substantial control over remaining issues for trial in the action. Application for appeal from the order may be made within ten days after entry of the order, pursuant to 28 U.S.C., § 1292(b). Pending any application for appeal and appeal action, the trial of the action will be stayed.