# CHARLESTON.

## J. C. BELCHER *v.* A. J. KING AND F. L. PARR.

Submitted May 20, 1924.    Decided May 29, 1924.

1.  APPEAL AND ERROR—*Verdict on Conflicting Oral Evidence Not Disturbed, Unless Clearly Against Preponderance.*

    A verdict based on conflicting oral evidence will not be disturbed unless so clearly against the preponderance of the evidence as to warrant the conclusion that the jury was influenced by passion, prejudice, bias or some ulterior motive. (p. 564).

2.  WITNESSES—*Persons Convicted of Felony Incompetent as Witness to Testify in Civil Case, Unless Pardoned or Punished.*

    A person who has been convicted and sentenced for a felony is not competent to testify in a civil case unless he has been pardoned or punished therefor.    (p. 568).

3.  SAME—*Challenge to Competency in Civil Suit on Ground That Witness is Felon Must be Made at Time of Offer or During Trial; Record of Conviction or Duly Attested Copy Best Evidence of Conviction for Felony, When Ground of Objection to Witness in Civil Suit.*

    A challenge to the competency of a witness in a civil trial on the ground that he is a felon under conviction and sentence must be made at the time he is offered as a witness or during the trial of the case; it will come too late after verdict. The record of the conviction, or duly attested copy

thereof, is the best evidence thereof, but if there be no objection on his part, or by any party to the suit, such person offered as a witness may testify as to his conviction and sentence.  (p. 568).

4. SAME—*Best Evidence of Pardon of Felon is Pardon Itself or Attested Copy; Witness May Testify to his Pardon, and State Terms and Conditions in the Absence of Objection.*

Likewise, the best evidence of the pardon of a felon is the pardon itself or an attested copy thereof; but if there be no objection, such person offered as a witness may testify that he has been pardoned, and state the conditions and terms of his pardon.  (p. 568).

5. DAMAGES—*Measure of Damages for Breach of Contract for Manufacture of Timber Into Lumber Stated; Plaintiff in Action for Breach of Contract for Manufacture of Timber Into Lumber Not Required to Prove Anticipated Profits Beyond Reasonable Certainty.*

The measure of damages for the breach of a contract for the manufacture of timber into lumber, or for so much thereof as remains unperformed by reason of the breach, is the difference between what the performance would cost and the price agreed to be paid therefor. In such case plaintiff is not required to prove to an absolute certainty what his profits would have been if the contract had not been breached by defendant.    Reasonable certainty will sustain a verdict. (p. 570).

Error to Circuit Court, Cabell County.

Action by J. C. Belcher against A. J. King and another. Judgment for plaintiff, and defendants bring error.

*Affirmed.*

*Simms & Staker,* for plaintiff in error.

*Sanders & Smoot* and *J. H. Strickling,* for defendant in error.

LIVELY, JUDGE:

This writ of error is prosecuted to a judgment of the circuit court in favor of plaintiff against defendants, entered September 27, 1923, on a verdict of $5,000 for damages for the breach of a timber contract.

Plaintiff claims that he had a verbal contract with defendants by which he was to cut down, transport to his mill, and

saw certain timber belonging to defendants on what is known in the record as the "lower job," at the price of $25 per thousand feet; and that after beginning work under the contract he was prevented from carrying it out by defendants, thus causing the breach. Defendants claim that there was no such contract made. On the general plea of non-assumpsit the parties went to trial with the result above indicated.

Plaintiff testified that the verbal contract was made with F. L. Parr, a member of the firm of King & Parr, on June 15, 1920, at his office at Kessler, in the vicinity of defendant's lumber operations. At that time Belcher was employed to saw lumber at $7.00 per thousand feet by Floyd S. Chapman, who was cutting, manufacturing and putting on sticks the timber on an operation conducted by defendants, known as the "Big Bull Hollow job," at the price of $30 per thousand feet. Belcher owned the sawmill which was doing the cutting. He was sent for by Parr to come to his office at Kessler, on June 15, 1920, where, he states Parr first proposed to rent his mill for the Big Bull Hollow operation, at a stated price, instead of continuing under the contract with Chapman. Belcher offered to rent it at $150 per month, but Parr offered only $100 per month, but agreed that if he got the mill at $100 per month he would contract with Belcher to cut, haul and manufacture the timber on the "lower job" at the price of $25 per thousand feet, to which Belcher assented; that the mill was turned over to defendants; and they proceeded to use it at the stipulated price of $100 per month, and that plaintiff immediately began preparation for cutting and sawing the timber on the "lower job;" that he employed workmen to build a building near the "lower job" in which the loggers would sleep; employed Sheppard and his son and others to cut portions of the timber and that they did cut about 175 trees, and that he dug out, constructed and improved a road through the premises for hauling the logs to the mill; and while doing so he was ordered to desist by Parr who claimed that he had no right to cut the timber, construct or improve the road; and in short had no contract. On the other hand, Parr detailed the conversation at his office at Kessler and claims that it was on the 15th of August instead of on the 15th day of June, 1920; that Floyd Chapman was

present and no such agreement was made concerning the "lower job," but that the mill was rented at $100 per month, and that the beginning of the payments at that price was to be dated back to the 15th day of June; that the frame building for the loggers on the "lower job" was suggested to be built by Belcher and that he, Parr, furnished the lumber and material therefor, the men to construct the building; that the men who were employed to cut trees on the "lower job" were in his employ, all of whom were paid for their work prior to the 15th of August, the date when the alleged contract was claimed to have been made with Belcher; that at that time he was negotiating for the timber on the Chew, Johnson and Femster tract which lay between the river and another tract lying on the mountain, the timber on which he owned (the two tracts forming what is known as the "lower job"); and that he purchased this timber on the Chew, Johnson and Femster tract in the fall of that year; that as Belcher knew the lines of the Chew, Johnson and Femster tract, he had asked him to show the hands where to do the cutting, but as a matter of fact a portion of the logs cut were on the tract which he had not as yet bought; that he did not know that Belcher was constructing the road until he went on the land and found him so engaged, when he told him to cease, that he had no contract with him whatever concerning the "lower job". Chapman corroborates Parr in the statement that no contract was made concerning the "lower job" in his presence at the office at Kessler. He says he was present on that occasion engaged in compiling some statement or calculation concerning the lumber business and did not pay strict attention to what transpired, but that if there had been a contract concerning the "lower job" entered into between the parties he would have recollected it. Chapman's evidence was somewhat weakened by the record of a former trial of the case in which it appears that he was not very clear as to whether a contract concerning the "lower job" had been entered into between Belcher and Parr. It appears that about the first of November, 1920, witness, Levi Jones, was sent to estimate the timber on the Chew, Johnson and Femster tract, pending the purchase thereof by deed from the owners. When they arrived on the tract they found

Belcher with a team of mules making a road or roads thereon. It appears that a controversy arose between Parr and Belcher relative to the right of way over that land, Parr claiming that they had not yet secured the right of way, the plaintiff saying that he had been told that the right of way had been secured. However, the work on the road was postponed, and Belcher was sent with Jones to point out the lines and assist in estimating the timber. After that time Parr would not permit the plaintiff to do any further work. Parr claims that at that particular time when he found Belcher making the roads a heated controversy arose between them and he drove Belcher away. Belcher claims that he was asked to desist for awhile in the construction of the road and directed to assist Jones in his work of estimating the timber. There is sharp conflict between Belcher and Parr as to what occurred on that particular occasion. The evidence of Jones is to the effect that he was employed by Parr, with whom he went to make an estimate of the timber on the two tracts, and when they arrived on the scene they found Belcher on the Chew, Johnson and Femster property with a team of mules making a road, and a conversation ensued between Parr and Belcher relative to some contract about which the witness was not interested and which conversation he says· was somewhat heated, but which wound up by Parr directing Belcher to assist in showing the lines of the two tracts and in making the estimates of timber. The evidence of Jones is somewhat corroborative of that of Belcher. There is other evidence, unnecessary to detail, which corroborates the contentions of both parties. Columbus Belcher was a witness for plaintiff, and detailed statements made to him by Parr to the effect that he intended to give or had given the "lower job" to plaintiff. The testimony of Columbus Belcher is challenged as incompetent because he had been convicted of a felony and sentenced therefor, and had not been punished or pardoned. This is one of the points of error which will be hereafter considered. The plaintiff testified that he was at all times able, ready and willing to perform the contract; that he had teams and two mills, had made a contract for cutting and slipping the timber on the two tracts at $7.00 per thousand, and that he could have sawed the logs at an expense of $5.00 per

thousand feet, leaving him a net profit per thousand of $6.00 on his contract; that he could have made a net profit of at least $6.00 per thousand if he had been permitted to perform his contract. Defendants showed that they manufactured the timber into lumber the following year at a cost of $29.32 per thousand, including the cost of putting the lumber on sticks, the cost of which latter item was not shown. This estimate included the cost of a bookkeeper at $150 a month and the salary of a Mr. Lusk who got the timber out on the "lower job", who was paid $250 per month. There was also evidence introduced to show that the price for labor was lower in 1922 than in 1920 and 1921, the time in which Belcher was to have done the work under his supposed contract. A summary of the evidence, not very full, has been given because error is assigned on the ground that the verdict is contrary to the preponderance of the evidence and should have been set aside on that ground; and because it was error to refuse a peremptory instruction to find for defendant. We do not think it was error to refuse the peremptory instruction. If the jury believed plaintiff's testimony there was sufficient evidence to warrant the finding that there was a contract as claimed and that it had been breached. It is not necessary to cite authorities sustaining the proposition that it is for the jury to pass upon the credibility of witnesses and the weight to be given to their evidence; and that their finding as to the weight and credibility will not generally be disturbed. Mere numerical preponderance in the number of witnesses is not sufficient to determine the preponderance of the evidence. The jury may believe or disbelieve the verbal testimony of any witness. It is well settled that a court will not set aside the verdict of a jury if the judge sitting as a member of the jury would have found a different verdict, and would have concluded that the preponderance or weight of evidence was against the party prevailing. And when we consider the evidence and the alleged part performance of the contract and the circumstances, we can not say that the jury was biased or prejudiced or that it was influenced by some ulterior or sinister motive in finding for the plaintiff. We can not reverse the case on the ground that the verdict is contrary to the weight or preponderance of the evidence.

In the petition error is assigned because of the giving and refusing to give instructions, but this assignment is not insisted upon or mentioned in the brief (except the refusal to give the peremptory instruction), and this assignment will be regarded as having been abandoned, and will not be considered.

The next ground of error is that the evidence of Columbus Belcher should have been stricken out and not permitted to go to the jury, because he was a convict under sentence at the time his evidence was given. No objection was made to his testimony on the ground that he was a felon under conviction until he was turned over to defendants' counsel for cross-examination, when it was brought out by his testimony that he had been convicted of murder, in Mingo county, and sentenced on the 4th of July, 1909, to be hanged; that his sentence had been commuted to life imprisonment by the Executive and that he had been given a parole or conditional pardon and had left the penitentiary in October, 1917, and that the condition of his pardon was that if he did not violate any of the laws for a period of two years he would be restored to full citizenship; and that he had not so violated his conditional pardon, had been an officer for about three years prior to the time of his testimony, and had voted in the elections. A motion was made to strike out his evidence and exclude it from the jury, but the court refused to do so, holding that under the verbal testimony of the witness, the introduction of which was objected to by neither party, the pardon restored the witness to full citizenship under section 17 of chapter 152, the first part of which says: "Except where it is otherwise expressly provided, a person convicted of felony shall not be a witness, unless he has been pardoned or punished therefor." Was it error not to exclude the evidence of this witness? Our statute, a portion of which is above quoted, prevents a person who has been convicted of a felony from giving testimony in a civil case unless he has been pardoned or punished therefor. At common law the conviction for an infamous crime and judgment thereon destroys the competency of a person as a witness. When an objection is made to a witness because of conviction of a felony it must be supported by the record of the conviction and judgment, or

by a duly authenticated copy. It must be produced and offered to sustain the objection at the time the witness is offered, or at the farthest in the course of the trial. It is too late after the verdict has been rendered. It is universally held that the party objecting to the testimony must be prepared with the record, expressed by some of the cases, "that he must come with it in his hand or he shall not be heard against the competency of the witness." A citation to the very numerous authorities and textbooks on this proposition will be found in Volume 4 Jones on Evidence, section 718, See *State* v. *Williams,* 14 W. Va. 851, 865. It is generally held, however, that it is not error to show the prior conviction of a felony by the parol testimony of the witness himself if this method of proof is not made the subject of an objection at the time. The best evidence of the conviction is the record. If there be no objection by the witness himself or a party to the litigation he may give the secondary evidence and state the date of his conviction, sentence and the crime. What is the use of proving by a record that which the witness says is true? Primary evidence must be forthcoming or its absence accounted for before secondary evidence can be introduced, but if secondary evidence be offered and no objection or exception taken thereto on the ground that it is secondary evidence, it may go in to the jury. If it has been proved by parol that the witness has been convicted of felony and no objection is made to the mode of proof either by the witness himself or a party in interest it is sufficient without the production of the record. *Perry* v. *People,* 86 N. Y. 353; *State* v. *Rockett,* 87 Mo. 666; *White* v. *State,* 33 Tex. Crim. 177. But if any party objects to the mode of proof, the record must be forthcoming, although the witness is willing to testify to and admit his conviction. *Rex* v. *Castell,* 8 East. 77; and in the *Matter of Real,* 55 Barb. (N. Y.) 186. Plaintiff did not object to the method of proving the conviction of Columbus Belcher of the crime of murder and his sentence therefor. Had he done so defendants would have been compelled to produce the record to sustain their objection to the competency of the witness. Hence, the objection here raised in brief of counsel for plaintiff, that the record was

not produced, is not well taken.    He permitted secondary evidence to go in without objection.    To relieve the witness from incompetency by reason of his conviction and sentence of the felony thus proven, it was necessary for plaintiff to show that he had either served his sentence or had been pardoned.    How was this done?    Manifestly, the expiration of the time of the commuted sentence could be shown, if such was the case; or the pardon could have been introduced.    Defendants asked the witness if he had been pardoned, and the witness replied that he had, and it was brought out by examination of counsel that the pardon was conditioned upon his good behavior for the period of two years, which period had expired.    The best evidence would have been the pardon itself, but the secondary evidence of the witness was introduced without objection on the part of defendants, and it appears from this secondary evidence that a pardon had been actually issued; true, it was a conditional pardon, but according to the witness the condition had been performed and the pardon was absolute.    Defendants permitted this evidence of the pardon to go in without objection, in fact, they elicited the evidence themselves by cross examination, and they cannot now complain that the pardon itself was not introduced.    Plaintiff did not object to the attack on the competency of the witness, without the record of conviction; and defendants did not object to the competency of the witness to testify because of the non-production of the pardon.    The same rule applies to each.    Under this situation the point of error is not maintained.    The evidence was properly admitted, no objection having been made to its mode of admission; and the court told the jury that they could give it such weight as they thought proper.    The fact of conviction and sentence went to the weight of the evidence and not to the competency of the witness.

The remaining assignment of error is that the evidence to sustain the amount of damages given is too indefinite and speculative; and it is pointed out that inasmuch as defendants cut the timber in the year following when prices of labor were lower, at $29.32 per thousand feet, the jury would not disregard this positive evidence of the actual cost.    We do not think the evidence of what it cost defendants to cut the

timber per thousand is conclusive. It will be noted that several items of cost were added to this estimate which would not enter into the plaintiff's expenses, namely, the salaries of a bookkeeper and a superintendent who overlooked the cutting of the timber at $250 per month. It will be further observed that in this estimate of $29.32 per thousand the cost of putting the lumber on sticks was included; whereas, it is contended by Belcher that his contract did not include the stacking of the lumber on sticks. The items of cost which enter into the computation of the $29.32 per thousand are not given. It is not stated what was the cost of cutting and slipping the timber per thousand nor the cost of hauling it, putting it on the skids, nor the cost of sawing. On the other hand, plaintiff testified that he had already made a contract for cutting and slipping the timber at $7.00 per thousand; that he had several offers to put the logs on skids at the mill at $7.00 per thousand, but that he could have hauled the logs with his mules at a cost of $5.00 per thousand feet. He further testified that he could have sawed the lumber at $5.00 per thousand. He had been in the lumber business in that region all his life practically, and was competent to testify as an expert to the cost of cutting, hauling and sawing. Defendants did not pretend to show that these items of expense would have been smaller. Defendants, to sustain their proposition that the evidence was not of such a certain and definite nature on which a verdict could be based, cite: *Tingler* v. *Lahti,* 87 W. Va. 499; *Wilson* v. *Wiggin,* 77 W. Va. 1; *Guinn* v. *Railroad Co.,* 46 W. Va. 151, and some other of our cases of like import. In *Tingler* v. *Lahti,* the evidence of damage to an automobile occasioned by a collision was not itemized, and a general statement of what it was thought would be the amount sufficient to repair the car was too indefinite and speculative, no itemized estimate of the cost of repairs necessary to restore the car to its original condition having been given. The verdict was for $300, and the only certain evidence of the specific sums necessary for the repair of the various parts of the machine was less than $100. The estimate of damage was based on a hasty examination and was merely opinion evidence. In *Newman* v. *Robson & Prichard,* 86 W. Va. 681, damages were recovered for exces-

sive levies of distress warrants which caused the plaintiff's place of business to be entered and closed up, and he recovered judgment for damage to his business without showing any data of what he lost or what profits he would have made during the time his business was closed. It was not shown whether he was making or losing money at that time. There was no data on which to base a verdict. In *Wilson* v. *Wiggin,* the plaintiff sued to recover the price of lumber sold, and defendant claimed the right to recoup damages for breach of contract, undertaking to show the quantity of several grades of lumber which had been shipped to him, but when asked to state the quantum of damages sustained he said he couldn't tell how much, that it was at least three or four or five thousand dollars, that it was as much as that, but he didn't know but what it was a whole lot more, and that he couldn't tell. There was obviously no data on which to base his stated claim for damages; it was too speculative and uncertain. He did not have much idea himself, of the amount of damage he had suffered. The cases cited illustrate the rule of law that if the loss occasioned by a breach of contract is pecuniary and is susceptible of proof with approximate accuracy the plaintiff must furnish the necessary proof and can not leave the quantum to mere conjecture. The measure of damages in executory contracts of this character which have been breached is the difference between what the performance of the contract would have cost and the price which the defendant had agreed to pay, the cost of performance to be estimated by the price of labor and materials at the time of the breach and not at any subsequent time. *Masterton* v. *Brooklyn,* 7 Hill (N. Y.) 61, 42 Am. Dec. 38; *Hinckley* v. *Steel Co.,* 121 U. S. 264; *Wilkinson* v. *Dunbar,* (N. C.) 62 S. E. 748. In cases of this character, the law does not require that the plaintiff must prove his damages or items of damage to the exactitude of a mathematical calculation; it is only necessary that the damages be proven to a reasonable certainty or a reasonable probability. *Hurxthal* v. *Boom Co.,* 65 W. Va. 346; *Smith* v. *Coal Co.,* 66 W. Va. 599, 605. Belcher had been in the lumber business for 54 years in that vicinity, and most of that time was engaged in its manufacture, taking the timber from the stump and converting it into lumber. It

appears that he was fitted by experience to make an estimate of the various items of cost which would at that time enter into the performance of his contract. He was then actually sawing for Chapman on the Big Bull Hollow job at $7.00 per thousand. He says the cost of sawing at the mill would be $5.00 per thousand; this would give him a profit of $2.00 per thousand for his mill and for his own services. He testified that he had made a contract with Sheppard and his son to cut the timber and slip it at $7.00 per thousand, and that he could have had the logs put on the skids at $7.00 per thousand. These appear to have been the main items of expense in carrying out the contract, assuming that a contract was made. These items of cost are not attempted to be controverted in any manner by defendant. If they were incorrect or overestimated, no doubt it could have been shown. It appears that Sheppard was summoned as a witness for plaintiff, but was not in attendance on the trial, and his evidence not taken by deposition. It appears further from defendants' testimony that off of the "lower job" they cut 876,633 feet; and Belcher says about 400,000 feet remained uncut. There may have been other items of expense in the manufacture, and the jury from the evidence might have well concluded that $6.00 per thousand profit was too much, for it will be noted that their verdict would not include all of the timber at $6.00 per thousand. The jury either calculated the profit at $6.00 per thousand on the amount of lumber that was actually cut, namely, 876,633 feet, without taking into consideration the 400,000 feet which remained on the land; or took into consideration the amount of timber remaining, and fixed the profit at less than $6.00 per thousand. The evidence of the items of cost in the performance of the contract is reasonably well established. They were not controverted by defendants, except to show that at a later date the cost of manufacturing the lumber was $29.32, in which several items of cost were included which would not have been incurred by plaintiff. As above suggested, we do not think the cost at which defendants manufactured the lumber at a later date would be controlling.

Finding no reversible error, the judgment will be affirmed.

*Affirmed.*