LARRY MOLLOHAN

*v.*

BLACK ROCK CONTRACTING, INC.

(No. 13645)

Decided June 28, 1977.

*Kay, Casto & Chaney, Thomas V. Flaherty* for appellant.

*Jack D. Huffman* for appellee.

HARSHBARGER, JUSTICE:

This appeal is by defendant Black Rock Contracting, Inc., from a jury trial in the Circuit Court of Braxton County in which a verdict of $10,465.20 was awarded to plaintiff Larry Mollohan.

On October 5, 1970, Mollohan contracted with Black Rock to unload 56,884 tons of stone from railroad cars and stockpile it at a railroad siding. Mollohan's complaint alleged that Black Rock breached the contract by getting Kenton Meadows Company, Inc. to do the work even though Mollohan was ready to perform the contract. Mollohan sued to recover his lost profits. The contract stated, in part:

> "Mollohan shall arrange for rail shipment from Greer Limestone Co. on our Order No. M-642, unload stone from cars, and stockpile stone in accordance with the W.Va. Dept. of HEW's spec. Mollohan shall furnish all labor, mtl., and equipment for said work. Black Rock shall withhold 5% of the money due until this work is completed. Work shall be completed 60 days after completion of siding."

Black Rock, in defense, alleged that on December 5, 1970, Mollohan told employees of Black Rock that he could not perform the contract because he possessed insufficient and unsuitable equipment. Even though this

conversation took place before Mollohan's performance was due, Black Rock contended that Mollohan's statements constituted an anticipatory repudiation and breach of contract which allowed Black Rock to consider it rescinded and justified the Kenton Meadows Company agreement.

There was contradictory evidence about whether Mollohan stated to Black Rock's agents that he could not or would not do the work. But both parties' evidence revealed Mollohan was to return physically his copy of the contract to Black Rock if he was not to perform it, and he did not return it.

Defendant assigns as errors the court's instruction to the jury and insufficiency of plaintiff's evidence to support the award.

Plaintiff offered seven instructions; defendant offered five. All were refused by the trial judge, who then fashioned an instruction from one of plaintiff's and one of defendant's:

> "The Court instructs the jury that the Material Purchase Order No. M. 693, Plaintiff's Exhibit No. 1 from Black Rock Contracting, Inc., of Charleston, West Virginia, to Larry Mollohan, of Gassaway, West Virginia, dated the 5th day of October, 1970, was a legal and binding contract, and unless you shall believe, from a preponderance of the evidence that Larry Mollohan repudiated his contract with Black Rock Contracting, Inc., and that that repudiation amounted to a refusal to perform the contract, then you must find for the plaintiff and assess his damages consistent with the following instruction.

\* \* \*

> "The Court instructs the Jury that if they believe from the evidence that the plaintiff is entitled to recover in this case, then they should proceed to assess the damages to which he is entitled, and the Court further instructs the Jury that in ascertaining such damages, they first determine from the evidence in this case what the entire costs would have been to the

plaintiff to complete his contract with the defendant, and after ascertaining the costs of completion, to deduct the same from the sum which the plaintiff would have been entitled to receive from the defendant under the terms of the contract, if the same had been performed. The result thus ascertained will be the damage which the plaintiff is entitled to recover in this action, if any at all.

"There was no objection to the given instruction."

The general rule set out in Rule 51, W.Va. R.C.P. and most recently enunciated in *Castro v. Martin,* _____ W. Va. _____, 230 S.E.2d 722, 731 (1976) is that ". . . no party may assign as error the giving of or the refusal to give an instruction unless he objects thereto before the arguments to the jury are begun, stating distinctly the matter to which he objects and the grounds of his objections and ordinarily this Court, in the exercise of the appellate jurisdiction, will consider only objections which have been made in this manner. . ."

Rule 51, as noted in *Castro v. Martin, supra,* and *Earp v. Vanderpool,* _____ W. Va. _____, 232 S.E.2d 513 (1976), rehearing denied March 11, 1977, allows us, in the interest of justice, to notice a plainly erroneous instruction even if it was not objected to before jury argument. Defendant proposes that we find this instruction plainly erroneous.

If we must examine every instruction not objected to in the trial court, the giving or refusal of which is urged to be plain error here, then the general rule requiring objection to an instruction at trial as a condition to appellate consideration is very nearly emasculated.

However, we cannot ignore the "plain error" exception because our basic philosophy that lawyer errors should never be allowed to prejudice litigants' rights to fair trials demands that we have the opportunity to examine grossly erroneous trial court actions regarding instructions. We stated in *Earp,* that "Where an error respect-

ing an instruction is not preserved by compliance with Rule 51 of the West Virginia Rules of Civil Procedure but is obvious and substantially affects the fairness and integrity of the trial proceeding, the interests of justice may mandate the exercise of this Court's discretionary authority to note plain error." The court found that the trial court had given no instruction on the issue upon which defendants sought to defend or to recover from plaintiff despite detailed testimony on the issue, and held this to be plain error.

The trial court instruction here sets out the case theory advanced by both sides, and the issue involved in the case is succinctly stated to be whether Larry Mollohan repudiated his contract with Black Rock, and if he did was his repudiation a refusal to perform the contract.

Defendant contends that use of "repudiation" by the court in its charge presented the jury a legal word of art. Instuctions should use common words that define legal requirements for or against recovery, instead of magic legal words or terms that a jury does not understand. *Shaw v. Perfetti*, 147 W. Va. 87, 125 S.E.2d 778 (1962). We agree that "repudiation" is a word of art; but it also is a word of common usage that describes conduct.

It is clear that whether Larry Mollohan repudiated his contract" refers to conflicting evidence concerning the conversation in which Mollohan allegedly said he would be unable to perform, and evidence about delivery of the contract back to Black Rock. *State v. Dodds*, 54 W. Va. 289, 46 S.E. 228 (1903). It was for the jury to decide if this evidence proved that Mollohan repudiated the contract, and the use of the word was not, certainly, "plain error."

The instruction also tells the jury they must find that the repudiation amounted to a refusal to perform the contract, in order to find for the defendant.

The principle of anticipatory repudiation as a breach of contract is well established in West Virginia law. *See*

*Annon v. Lucas*, 155 W. Va. 368, 185 S.E.2d 343 (1971); *Fayette-Kanawha Coal Co. v. Lake and Export Coal Corp.*, 91 W. Va. 132, 112 S.E. 222 (1922); and *Bannister v. Victoria Coal and Coke Co.*, 63 W. Va. 502, 61 S.E. 338 (1908). *See also* Riley, *The Doctrine of Anticipatory Breach as Applied in West Virginia*, 31 W. Va. L.Q. 182 (1925); and Note, *Contracts—Anticipatory Breach*, 15 Va.L.Rev. 368 (1928).

The standard rule for determining whether a party may sue for damages because of another party's anticipatory breach (or defend against a suit by the breaching party) appears in *Fayette-Kanawha Coal Co.*, 91 W. Va. at 141-142, 112 S.E. at 226.

> "It has been held frequently that the renunciation of an executory contract by one party thereto, which would excuse performance by the other, must be unequivocal and deal with the entire performance to which the contract binds the party which it is claimed has renounced the same."

*See also Roehm v. Horst*, 178 U.S. 1, 20 S. Ct. 780, 44 L. Ed. 953 (1900).

So we find it well established that when an obligee sues for contract damages because of breach of contract before the time for performance is due, the anticipatory breach must be positive, absolute and unequivocal. And of course such unequivocal acts are a defense to any suit by the breaching party on the contract.[1]

---

[1] The *Restatement (Second) of Contracts* (Tent. Drafts Nos. 8 and 9, 1973-1974) introduces the concept presently embodied in *W. Va. Code*, 46-2-609 [1963], applying to contracts for the sale of goods, that where there is a wavering party to an executory contract the other party can demand assurances in advance of the performance date that the waverer will in fact perform as agreed. If the assurances are not given, the party demanding them can treat the contract as repudiated.

We are not prepared to adopt this concept in our general contract law except to the extent that a demand for assurances and failure to give them may be *evidence* of repudiation to present to a jury with other evidence to prove absolute, unequivocal and positive repudiation and anticipatory breach.

Defendant's second assignment of error is that plaintiff did not introduce competent evidence to measure his lost profits and therefore the jury verdict was arrived at by speculation and conjecture.

Mollohan testified that he anticipated his cost of performing the contract would be "around three thousand dollars" for labor and "about thirty six hundred dollars" for fuel, oil, and other material.

"Q. Now, that would be a total of sixty six hundred dollars. Is that what you figured your cost would be?

A. Roughly, yes.

Q. Do you know what that would leave from seventeen thousand?

A. Well, approximately ten thousand dollars.

Q. It would have been ten thousand four hundred sixty five dollars and twenty cents?

A. I believe that is the correct figure."

Defendant offered no evidence contradicting Mollohan's cost figures for fuel, manpower and equipment.

It is impossible for the plaintiff in a case such as this, to predict weather delays, fuel and equipment price changes, and other items of cost to be deducted from the contract price, leaving him a precisely calculated profit to present to the jury as his damages.

In our state the most common cases involving lost profits caused by executory contract breach have involved timbering contracts. In *Belcher v. King*, 96 W. Va. 562, 123 S.E. 398 (1924), this Court held that plaintiff proved his damages to a reasonable certainty when he testified to the cost of performance and defendant did not show that the items of expense would have been different. The Court stated, "In cases of this character, the law does not require that the plaintiff must prove his damages or items of damage to the exactitude of a mathematical calculation; it is only necessary that the damages be proven to a reasonable certainty or a rea-

sonable probability." 96 W. Va. at 572, 123 S.E. at 402. *See also, Franklin v. Pence*, 128 W. Va. 353, 36 S.E.2d 505 (1945), and *Billings v. Killen*, 111 W. Va. 551, 162 S.E. 892 (1932).

We find no reversible error in the instruction nor in the sufficiency of the evidence to support the damages and affirm the trial court.

*Judgment affirmed.*