DAVIS, Circuit Judge,
dissenting in part and concurring in part:
I agree with the disposition of SPARC’S cross-appeal in Part III of the Majority Opinion. I am unable to join my fine colleagues in the majority, however, in the disposition of the appeal by HTC. The majority asserts that HTC’s suit “sought a preliminary injunction, which was granted shortly thereafter, and requested an order of specific performance.” Maj. Op. at 290. Unlike the majority, but like the district court, I am persuaded that the preliminary injunction sought and obtained by HTC was the very “order of specific performance” it sought by filing this suit in December 2007.
As the district court recognized, at the time of SPARC’S alleged breach, the preliminary injunction (despite the nomenclature) afforded HTC complete relief for the very breach of contract in consequence of which it sought a remedy from the district court. J.A. 983-85. West Virginia contract law is clear: a party may obtain either specific performance of a contract, or damages flowing from a breach of a contract, but not both. Stone v. Kaufman, 88 W.Va. 588, 107 S.E. 295, 296 (1921) (“The remedy of specific performance and by an action for damages for a breach of contract, are not inconsistent. Under the law, a party to a contract breached by the other may pursue not both but either remedy, as our cases on the subject all hold.”). Thus, the effect of the majority’s remand for a trial on damages gives HTC two bites of an apple under circumstances in which West Virginia law permits it only one bite. Id.
To be sure, whether SPARC’S posturing in connection with, and after delivery of, the October 17, 2007 letter constitutes an actionable repudiation of the agreement presents a close question in my view, one not comfortably resolved as a matter of law.[1] Certainly, there is no evidence in the record that SPARC had a third party waiting in the wings with which it could quickly do business. Thus, the majority’s assertion that SPARC “was seeking to get out of the contract as fast as it could,” Maj. Op. at 292, is curious.[2] But accepting the district court’s conclusion that HTC was entitled to treat the letter as an anticipatory repudiation, and thus as an actionable breach of contract, it is clear that what HTC was entitled to under West Virginia law was to make a choice:
[1] treat the contract as rescinded, and recover on quantum meruit so far as [it] ha[d] performed; ...
[2] keep the contract alive for the benefit of both par ties, being at all times ready and able to perform, and at the end of the time specified in the contract *299 for performance, sue and recover under the contract; or
[3] treat the repudiation as putting an end to the con tract, and sue for the profits [it] would have realized if [it] had not been prevented from performing.
Point 1, syllabus, Annon v. Lucas, 155 W.Va. 368, 185 S.E.2d 343 (1971) (brackets and alteration added).[3]
It is clear to me that HTC chose option number three: it treated the repudiation as an actionable breach of contract and persuaded the district court to accept that characterization. Rather than sue then and there for lost profits and the benefit of its bargain, however, it sought and obtained the alternative remedy of specific performance,[4] The effect of the preliminary injunction (that is, the order of specific performance) was threefold: (1) it precluded SPARC from entering into any alternative arrangement with respect to the land with a willing third party; (2) it affirmatively required SPARC to perform fully its contractual undertakings going forward, i.e., to record a proper “final plat” and to forebear from any further acts or omissions inconsistent with the parties’ agreement; and (3) it permitted HTC to continue, as contemplated by the parties’ agreement, its quest for financing that would have been critical to its consummation of the deal.[5] Having foregone a claim for damages, HTC received all to which it was entitled.
The majority concludes, to the contrary, that HTC chose option two, that is, “it kept the contract alive.” But how did HTC keep the contract alive? It obtained an order of specific performance requiring SPARC to perform. Most assuredly, as the district court recognized, this is not what West Virginia law anticipates.
If A contracts to sell land to B for $100, but A gets a better offer in the meantime and threatens to sell to C for $200, then B has a choice to make. B can sue A (because B claims an entitlement to the apparent $100 increase in the value of the land, and thus the benefit of his bargain) and B can seek, at the commencement of the suit, in the alternative, specific performance and damages. In particular, B can choose to allow A to sell to C and limit his damages claim against A to the disputed $100 profit. On the other hand, however, at B’s insistence, the court will compel A to go through with his deal with B and sell to B at $100. If, thereafter, C changes his mind and decides not to buy from B for the $200 he had offered A, surely B could *300 not then seek damages of $100 from A on a theory of breach of contract. But that seems to me to be the import of the majority’s approach in this case.
I take a different view of the record. Just as B obtained complete relief (specific performance) in the above scenario, HTC obtained complete relief before the district court, namely, SPARC’S full performance of any and all of its contractual undertakings that were due on and after the issuance of the preliminary injunction.[6] Contrary to the majority’s view, HTC did not “change its mind” see Maj. Op. at 293-94 or “abandon [] its claim for specific performance.” Id. at 295. HTC could not “change its mind” because it had already received what it wanted and what it proved it was entitled to: specific performance.
There is not a scintilla of evidence in the record to suggest that SPARC committed any further breach of contract after the district court issued its preliminary injunction and after the parties had “continued to perform.” See supra note 6.[7] Eventually, as it was entitled to do, HTC elected to abandon the agreement when it failed to obtain the financing necessary to continue with the deal, notwithstanding the “make whole” relief it had obtained from the district court.[8]
Thus, with one exception, I would affirm the district court’s order dismissing this *301 case as fully heard and resolved. I would vacate the district court’s order insofar as it denied attorney’s fees to HTC and remand the case for consideration by the district court whether fees should be awarded. Consistent with the views expressed above, I would permit HTC to argue that it was a “prevailing party” because it persuaded the district court to issue an order of specific performance, i.e., the preliminary injunction.[9]
With respect, I dissent.

. See Mollohan v. Black Rock Contracting, Inc., 160 W.Va. 446, 235 S.E.2d 813, 816 (1977) (quoting Dingley v. Oler, 117 U.S. 490, 502, 6 S.Ct. 850, 29 L.Ed. 984 (1886)) ("An anticipatory repudiation must be ‘a positive, unconditional, and unequivocal declaration of fixed purpose not to perform the contract in any event or at any time.' ”); Wood County Airport Auth. v. Crown Airways, Inc., 919 F.Supp. 960, 967-69 (S.D.W.Va.1996).

. Indeed, in its preliminary injunction opinion, the district court specifically found that "[SPARC] ... has no present plans to re-lease or otherwise affect the disputed property.” J.A. 346.

. "[T]he syllabus ... is the law in West Virginia." Union Trust Co. of Maryland v. Townshend, 101 F.2d 903, 910 (4th Cir.1939).

. Of course, it is not at all surprising that HTC did not seek money damages (in the form of lost profits) in December 2007 because it almost certainly would have encountered a wholesale failure of proof at that time. This is true notwithstanding that HTC repeatedly assured the district court at the time of the preliminary injunction hearing that financing for the deal was well in hand. J.A. 346 ("HTC has secured acceptable financing for the project.”). In any event, as the majority acknowledges, Maj. Op. at 297, the measure of damages in the unusual circumstances of this case will be for the district court to fathom in the first instance.

. The district court's injunction ordered:
... that SPARC and the Trust are hereby enjoined from selling or re-leasing the property in question for a period of 120 days from the December 18, 2007, hearing, or April 16, 2008. SPARC and the Trust are further enjoined from taking any actions with respect to the Lease which are inconsistent with the terms of the Lease as if the same remain in full force and effect. During this period, HTC may exercise its rights under the Lease to continue the project going forward with respect to financing, inspection, and other issues preliminary to construction.
J.A. 346-47.

. The district court described the effect of HTC’s decision to seek and obtain specific performance by SPARC as a "forfeiture” of its damages claim. J.A. 985. Whether or not that characterization is the most apt, the district court was surely correct in reasoning that HTC had achieved all the relief to which it was entitled by virtue of the preliminary injunction:
[N]o genuine issue of material fact exists with regard to whether or not the parties continued to perform under the Lease following the repudiation.... [I]t is uncontested that [SPARC] continued performance under the Lease by securing approval of the final plat from the Jefferson County Planning Commission and by recording the same in the office of the Clerk of the County Commission of Jefferson County.
J.A. 985.

. It appears that the unspoken theory of HTC, implicitly embraced by the majority, is that simply by requiring HTC to file a lawsuit, SPARC thereby cast something of a pall over the deal, possibly scaring off potential lenders and investors. As a matter of West Virginia law, it is doubtful that SPARC owed HTC some extra-contractual duty to display public enthusiasm for the deal. At all events, HTC surely foresaw that some if not many potential investors would not look benignly at the December litigation, and this would be particularly true during the nationwide economic collapse of late 2007. See J.A. 346 ("This Court recognizes the difficulties in the mortgage market over the last year.”). This is yet a further indication that HTC made a binding election of remedies in December 2007.

. As the majority notes and as the district court recognized, the parties' agreement was structured such that there were two separate and distinct parts to the agreement. The first part essentially required affirmative performance by both parties, i.e., to obtain the necessary permits and financing for the project, and to fashion and record the "final plat.” The second part laid out terms for the actual construction of the buildings and leasing of the land. J.A. 30-47. Bifurcating the two parts of the contract was an election clause, which effectively allowed HTC to terminate the agreement going forward if it was unable to secure financing:
Until all of the conditions set forth in Paragraph 3 herein are satisfied, Tenant may terminate this Lease by giving written notice to Landlord as provided herein, and this Lease shall be of no further force or effect, except for such matters which are designated to survive the termination of this Lease and except for any payment obligations pursuant to Paragraph 6(B) herein.
J.A. 32.
At that point, if HTC elected not to go forward with the Lease, the agreement would naturally terminate, releasing both parties from further performance.

. A party may prevail, for the purposes of an award of contractual attorney’s fees, in any one (or more) of three ways: (1) by winning the lawsuit; (2) by prevailing on the principal issues; and (3) when there is a causal connection between the lawsuit and a change in the defendant’s conduct. See Daily Gazette Co., Inc. v. West Virginia Dev. Office, 206 W.Va. 51, 521 S.E.2d 543, 553-54 (1999) (construing statutory fee-shifting provision allowing an award of fees to a "successful party”). Arguably, HTC was a prevailing party in that it obtained an order for specific performance; presumably, any award of attorney’s fees would cover only the fees incurred in obtaining the preliminary injunction.