FILED
**June 11, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 20-0041 — *Miller et al v. WesBanco Bank, Inc.*
No. 20-0042 —*WesBanco Bank, Inc. v. Miller et al*

WOOTON, J., concurring, in part, and dissenting, in part:

As to the majority's resolution of these consolidated appeals, I concur in its rejection of Wesbanco's multiple challenges to the jury's liability verdict. I respectfully dissent, however, to the majority's reversal and remand for a new trial on damages, as well as its affirmance of the circuit court's refusal to permit prejudgment interest. As does the majority opinion, I will address each in turn beginning with the Millers' appeal on the issue of prejudgment interest.

As indicated, I dissent to the majority's conclusion that the Millers were foreclosed from an award of prejudgment interest because they failed to request the award from the jury. The issue presented is straightforward: whether West Virginia Code § 56-6-31 (2018)—which provides that prejudgment interest is to be mandatorily awarded by the court—is applicable to a contract action, or whether West Virginia Code § 56-5-27 (1923)—which provides that prejudgment interest may be sought from the jury—applies. The issue was first addressed in *Thompson v. Stuckey*, 171 W. Va. 483, 300 S.E.2d 295 (1983)*,* analyzing the language of the 1981 version of West Virginia Code § 56-6-31.

The 1981 version of West Virginia Code § 56-6-31 stated, in pertinent part, that "[e]xcept where it is otherwise provided by law, every judgment or decree for the payment of money entered by any court of this State shall bear interest from the date

1

thereof, whether it be so stated in the judgment or decree or not[.]" The *Thompson* Court found that the "[e]xcept where it is otherwise provided by law" language served to carve out contract cases, interest on which was referenced elsewhere in West Virginia Code § 56-6-27: "[T]he jury, in any action founded on contract, may allow interest on the principal due . . . ." *Thompson* held, in a cursory, two-paragraph analysis, that prejudgment interest in contract cases was therefore "otherwise provided by law" and governed by section 27, requiring a request for prejudgment interest to be made to the jury, rather than awarded by the court post-verdict. *Id*. at 488, 300 S.E.2d at 300. The Court held firm to this conclusion in *City National Bank of Charleston v. Wells*, 181 W. Va. 763, 778, 384 S.E.2d 374, 389 (1989), stating that "W. Va. Code, 56-6-31, does not specifically apply to contract actions." However, this conclusion is belied by the Legislature's next amendment of the statute.

In 2006, the Legislature added a phrase to the opening language of West Virginia Code § 56-6-31, designed to clarify its applicability to *all* actions for monetary damages as follows: "Except where it is otherwise provided by law, every judgment or decree for the payment of money, *whether in an action sounding in tort, contract or otherwise*, entered in any court of this state shall bear interest from the date thereof[.]" (emphasis added). This language was clearly in response to *Thompson's* attempt to carve

out such cases from the ambit of the statute and clarify that the statute governed interest awards on all cases, unless otherwise indicated.[1]

To date, the significance of this added language has never been fully analyzed by this Court. Refusing to revisit the holding in *Thompson* despite two additional amendments to the statute, the Court instead constructed a house of cards based upon the presumption that the amendments were of no significance to the holding in *Thompson*, without analysis of any sort. *See Ringer v Johns*, 230 W. Va. 687, 742 S.E.2d 103 (2013). In *Ringer*—a per curiam decision—the Court declared in a footnote, without any meaningful discussion, that the retention of the language "[e]xcept where it is otherwise provided by law" in the 2006 amendment left *Thompson's* holding intact: "Despite the [amendment to the statute] . . . the phrase '[e]xcept where it is otherwise provided by law' was retained. Accordingly, we do not find that this statutory amendment provides any basis to revisit our holding in [*Thompson*]." *Id*. at 691 n.6, 742 S.E.2d at 107 n.6.

The statute was then reconfigured in 2018, separating the opening language from the succeeding subsections addressing prejudgment and post-judgment interest individually, and clarifying that interest was to be calculated as "simple, not

---

[1] Notably, this language did not appear in the bill's original form. Senate Bill 576, introduced on February 15, 2006, did not include this language; it was specifically added in a Committee Substitute adopted by the Senate Judiciary Committee on February 23, 2006.

compounding[.]" W. Va. Code § 56-6-31(a).[2] The 2018 version was then addressed in *Tri-State Petroleum Corp. v. Coyne*, 240 W. Va. 542, 814 S.E.2d 205 (2018), but only insofar as the statute applied to *tort* actions.[3] Once again, however, in pure *dicta*, the Court dismissed the 2018 revisions to the statute as "stylistic" in a footnote, without any analysis. *Id.* at 566 n.84, 814 S.E.2d at 229 n.84.[4]

Despite the new opportunity presented in this case to finally evaluate the statute's evolution and ascribe the proper and obvious significance to the Legislature's 2006 addition of the phrase "whether in an action sounding in tort, contract or otherwise," the majority once again evades that analysis. Instead, it dances around the Court's previous reliance upon the "otherwise provided by law" language, uses the most recent clean-up of the statute from a grammatical and organizational standpoint as a smoke screen, and then simply concludes that the more specific statute applies.

_____

[2] Although the Millers maintain that it is this most recent 2018 amendment to West Virginia Code § 56-6-31 which creates separation between their case and *Thompson*, it was actually the first amendment in 2006 that made the most significant revision to the statute's scope making *Thompson's* holding inapplicable thereafter.

[3] "[T]he circuit court characterized this matter as one sounding primarily in tort. . . . [W]e accept that premise and so turn our attention to West Virginia Code § 56-6-31, which controls awards of prejudgment interest in tort actions." 240 W. Va. at 566, 814 S.E.2d at 229.

[4] In fairness to the *Tri-State Petroleum* Court, however, the revision to the statute did not in fact impact its decision since West Virginia Code § 56-6-31 had always been read as applicable to tort actions.

The 2018 amendment broke subsection (a) of the statute into smaller, more readable subsections and inserted the caveat that the interest described therein is to be "simple, not compounding." The pertinent portions of the statute are otherwise, in substance, entirely the same as the 2006 version:[5]

> <u>2006</u>
>
> (a) Except where it is otherwise provided by law, every judgment or decree for the payment of money, *whether in an action sounding in tort, contract or otherwise*, entered by any court of this state shall bear interest from the date thereof, whether it be so stated in the judgment or decree or not: *Provided*, That if the judgment or decree, or any part thereof, is for special damages, as defined below, or for liquidated damages, the amount of special or liquidated damages shall bear interest at the rate in effect for the calendar year in which the right to bring the same shall have accrued, as determined by the court and that established rate shall remain constant from that date until the date of the judgment or decree, notwithstanding changes in the federal reserve district discount rate in effect in subsequent years prior to the date of the judgment or decree. Special damages includes [sic] . . . .

(emphasis added).

> <u>2018</u>
>
> (a) Except where it is otherwise provided by law, every judgment or decree for the payment of money, *whether in an action sounding in tort, contract, or otherwise*, entered by any court of this state shall bear simple, not compounding, interest, whether it is stated in the judgment decree or not.
>
> (b) *Prejudgment* -- In any judgment or decree that contains special damages, as defined below, or for liquidated damages, the court may award prejudgment interest on all or some of the amount of the special or liquidated damages, as calculated after

[5] The amendment's most significant alterations were to the calculation of interest rates, none of which are germane here.

the amount of any settlements. Any such amounts of special or liquidated damages shall bear simple, not compounding, interest. Special damages include . . . .

(emphasis added). Despite being almost entirely identical in language—other than revisions necessary for grammatical purposes—the majority confers great significance onto the Legislature's simple division of an unwieldy paragraph for organizational and readability purposes. In analyzing these simple changes, the majority shows its hand.

The majority notes that in the most recent reorganization of the statute, the "otherwise provided by law" language is now separated from the language regarding the award of prejudgment interest in different subparagraphs. It then reasons that, as a result, the "otherwise provided by law" language now pertains only to the provision for simple rather than compounding interest. Importantly, had the majority stopped there, this reading would require the majority to conclude that the award of prejudgment interest is no longer subject to the "otherwise provided by law" exemption created in *Thompson* for contract cases and would therefore apply to this case. Undoubtedly sensing the tension this creates with its result, the majority pivots and suddenly ascribes *great* significance to the "sounding in tort, contract, or otherwise" language and notes that such language is *also* now appended only to the subparagraph regarding "simple, not compounding" interest, implying that it therefore has no effect on the award of prejudgment interest as described in subsection (b).

6

Finding itself now squarely at odds with the path taken in *Thompson* and the significance it ascribed to the "otherwise provided by law" language, the majority makes its greatest leap and decides that because West Virginia Code § 56-6-27 is more specific, canons of statutory construction mandate that "the specific statute governs." However, the rule of statutory construction requiring "a specific statute be given precedence over a general statute relating to the same subject matter where the two cannot be reconciled" is inapplicable here because *both* statutes speak to the same subject matter. Syl. Pt. 1, *UMWA by Trumka v. Kingdon*, 174 W. Va. 330, 325 S.E.2d 120 (1984). While West Virginia Code § 56-6-27 is clearly applicable to "any action founded on contract," likewise, with the inclusion of the language "whether in an action sounding in tort, contract or otherwise," West Virginia Code § 56-6-31 is *also* specifically applicable to contract actions.[6]

In its final salvo, the majority contends that the failure to repeal West Virginia Code § 56-6-27 is further evidence of its continued applicability to contract actions. However, to read section 31 as somehow *not* applying to contract cases makes the language within that very statute—"whether in an action sounding in . . . contract"— meaningless. "It is always presumed that the legislature will not enact a meaningless or useless statute." Syl. Pt. 4, *State ex rel. Hardesty v. Aracoma - Chief Logan No. 4523,*

---

[6] While the majority is under no obligation to justify the rationale utilized by prior courts, principles of stare decisis would suggest that the majority, at a minimum, should articulate why the "specific versus general" canon of statutory construction could not have just as easily resolved this issue when it first arose in *Thompson* nearly forty years ago, at a time when the statute at issue did not even contain the "whether . . . sounding in . . . contract" language.

*Veterans of Foreign Wars of U.S., Inc.*, 147 W. Va. 645, 129 S.E.2d 921 (1963). Further, it is well-established that "courts are not to eliminate through judicial interpretation words [in a statute] that were purposely included[.]" Syl. Pt. 11, in part, *Brooke B. v. Ray,* 230 W.Va. 355, 738 S.E.2d 21 (2013); *In re R. S.*, ___ W. Va. ___, ___, 855 S.E.2d 355, 364 (W. Va. 2021) ("Our rules of statutory construction do not permit us to disregard a statute without legislative direction to do so.").

Perhaps more to the point, the majority selectively chooses which canons of statutory construction apply, ignoring others which would command a different result. In particular, West Virginia Code § 56-6-27 was first enacted in 1868 and most recently amended nearly one hundred years ago in 1923. This Court has long held that "[w]hen faced with two conflicting enactments, this Court and courts generally follow the black-letter principle that 'effect should always be given to the latest . . . expression of the legislative will[.]'" *Wiley v. Toppings*, 210 W. Va. 173, 175, 556 S.E.2d 818, 820 (2001) (quoting *Joseph Speidel Grocery Co. v. Warder*, 56 W.Va. 602, 608, 49 S.E. 534, 536 (1904)) (footnote omitted). The Legislature's most recent expression of its will unambiguously states that prejudgment interest is to be awarded by the court, "whether in an action sounding in tort, *contract*, or otherwise," making both the circuit court and majority's conclusion that only the jury may make such award in contract cases erroneous. Accordingly, I respectfully dissent and would reverse and remand to the circuit court for a calculation and award of prejudgment interest on the Millers' special damages.

8

Turning now to WesBanco's appeal, I concur in the majority's analysis of WesBanco's challenges to the liability verdict against it and would similarly affirm on those grounds. However, I disagree with the majority's conclusion that the damages verdict is against the "clear weight" of the evidence warranting a retrial and therefore dissent as to that aspect of WesBanco's appeal.

Under the guiding standard of review, this Court is obliged to view the evidence, conflicts in the evidence, and the inferences to be drawn from the evidence all in the Millers' favor:

> In determining whether there is sufficient evidence to support a jury verdict the court should: (1) consider the evidence most favorable to the prevailing party; (2) assume that all conflicts in the evidence were resolved by the jury in favor of the prevailing party; (3) assume as proved all facts which the prevailing party's evidence tends to prove; and (4) give to the prevailing party the benefit of all favorable inferences which reasonably may be drawn from the facts proved.

Syl. Pt. 5, *Orr v. Crowder*, 173 W. Va. 335, 315 S.E.2d 593 (1983). In direct contradiction to these requirements, the majority credits WesBanco's characterization of the evidence, deeming the jury's damages award too nebulous to stand and on that ground alone, remands for a new trial on damages.

Complaining that the jury's verdict was based in part on a spreadsheet of expenses incurred in the Millers' completion of their home that was "very general," "not clear," and "appears" to include *some* unrelated damages, the majority concludes that "to

9

the extent" the verdict reflects these damages it is against the weight of the evidence. These characterizations of the evidence and verdict alone demonstrate that the majority has failed to afford the Millers all of the presumptions to which they are entitled on appeal. Moreover, the majority fails to mention that WesBanco made no objection to the admission of the spreadsheet into evidence. Further, WesBanco's counsel spent nearly sixty pages of testimony cross-examining the Millers on the allegedly unrelated damages yet made barely a mention of the spreadsheet and damages in closing. Even before this Court, WesBanco fails to articulate with any specificity the line items in the spreadsheet which it contends it established as unrecoverable.[7] The Court is therefore obliged to conclude that the jury

---

[7] Further, Wesbanco apparently neither filed a motion in limine to limit introduction of any of these specific line items of expenses, as would be expected, nor did it attempt during trial to prohibit the jury from considering any of these specific items. While it moved for directed verdict on the basis that Millers had failed in their burden of proof on the whole as to their damages, WesBanco made no effort to preclude the jury from considering any particular expenses. During closing, counsel merely referred the jury to the spreadsheet and stated "when you get back into the jury room you look at her compilation of damages . . . and it's filled with things that Residential Creations was not required to do." Leaving the jury to sort through the testimony and spreadsheet and decide for themselves which items were unrelated, counsel continued:

> [T]he Millers can't tell you with any specificity . . . whether and to what extent we paid for work that wasn't done. It's not in there. Nowhere in the entire case. You'll take back with you all of the exhibits. You'll remember all of the testimony. And nobody ever said how much we paid Residential Creations for work that wasn't done. The reason is they can't, [is] because we only paid for work that was done.

Similarly, during the hearing on its motion for a new trial, WesBanco conceded it made no effort to separate items it believed it successfully challenged as being unrelated, stating (continued . . .)

considered both the damages submitted and WesBanco's attempts to undermine the relatedness of those damages and resolved those disputes in the Millers' favor.

Further, the majority bemoans the fact that the jury's verdict was "unallocated" between the two types of damages incurred—for work improperly paid by WesBanco but not completed and the mechanic's lien for which it failed to obtain a waiver. Yet the majority fails to note that the verdict form utilized was proposed *by WesBanco* and includes only a single line asking the jury to state "[w]hat amount of damages [] the Millers incur[red] as a direct and proximate result of WesBanco's breach of the loan agreement[.]" WesBanco further made no objection to the verdict when it was returned: "Absent extenuating circumstances, the failure to timely object to a defect or irregularity in the verdict form when the jury returns the verdict and prior to the jury's discharge, constitutes a waiver of the defect or irregularity in the verdict form." Syl. Pt. 2, *Combs v. Hahn*, 205 W. Va. 102, 516 S.E.2d 506 (1999). Perhaps most importantly, neither party appears to dispute that the jury's $404,500 verdict is quite plainly comprised of the $287,500 in damages for unfinished work set forth on the Millers' spreadsheet and the $117,000

___

"There are lots of examples of what would have been paid for in these last two draws that were never paid. Again, it's not our duty to ferret out these things from that schedule."

WesBanco—both below and before this Court—treats the damages as entirely unrecoverable and therefore gambles that "someone else" will sort through the convoluted and non-specific testimony about the relatedness of the individual expenses claimed by the Millers. The majority—as did the jury—declines to do so, but rather than making WesBanco suffer the consequences of its gamble, gives it a second opportunity to focus its defense on damages.

representing the unpaid mechanic's lien. Therefore, it is unclear why the majority is so concerned with allocating this amount.

To reverse the jury's damages award—an award sustained by the trial judge upon consideration of post-trial motions—requires this Court to ignore established caselaw and the deference to which the jury verdict is entitled. In addition, such a reversal imposes an evidentiary burden that is greater than our law requires. To make a claim for breach of contract damages, the law requires only that "[t]he evidence . . . afford data, facts and circumstances, reasonably certain, from which the jury may find the actual loss." *Carpenter v. Hyman*, 67 W. Va. 4, 8, 66 S.E. 1078, 1080 (1910). Further, "'the law does not require that the plaintiff must prove his damages or items of damage to the exactitude of a mathematical calculation; it is only necessary that the damages be proven to a reasonable certainty[.]'" *Mollohan v. Black Rock Contracting, Inc*., 160 W. Va. 446, 452–53, 235 S.E.2d 813, 816 (1977) (quoting *Belcher v. King*, 160 W. Va. 562, 572, 123 S.E.2d 398, 402 (1924)); *Ripley v. C. I. Whitten Transfer Co*., 135 W. Va. 419, 422, 63 S.E.2d 626, 628 (1951) ("[I]f there is a sufficient basis furnished by the evidence, mathematical precision and absolute certainty are not required. But the jury may be authorized from consideration of all the facts and circumstances of a case tending to establish damages in the amount thereof to make a reasonable estimate of damages from direct evidence and upon inferences founded upon evidence.").

Therefore, while I concur in the majority's rejection of WesBanco's appeal of the jury's liability verdict, I respectfully dissent to its reversal and remand for a new trial on damages. However, upon retrial of damages, clearly the Millers should be permitted to request prejudgment interest from the jury, consistent with the majority's new syllabus point as articulated herein.